UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )<br>)<br>CLARENCE L. EARLE          )<br>a/k/a ERIC ALLEN          )<br>a/k/a LEMONT TIPPET          )<br>a/k/a THEODORE WILSON          )<br>a/k/a ROBERT PREVAL          )<br>) | Case No.  04-cr-10065 MLW |

## GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Seth P. Berman, respectfully submits this trial brief to assist the Court during the upcoming trial of the above-captioned matter, which is not yet scheduled, but must be tried prior to April 7, 2005, the date the Speedy Trial clock expires.  The trial is expected to last for approximately three days.  The defendant is represented by Paul Markham, Esq.

There are no outstanding discovery issues.

### Summary of Facts

On March 10, 2004, a grand jury sitting in this district returned a one count Indictment charging Clarence Earle (hereinafter "defendant") with Unlawful Reentry of a Deported Alien, in violation of Title 18, United States Code, Section 1326.

The defendant's Alien File (hereinafter "A-file") indicates that he has been deported from the United States on at least two occasions since 1990.  According to the A-file, the defendant's

first statement under oath to United States Immigration authorities occurred on January 25, 1990, when he completed a written affidavit stating that he was a native of Jamaica and that he had entered the United States illegally in 1986 by stowing away on a passenger ship and avoiding immigration authorities. On February 22, 1990, the defendant, using the name Clarence Earle, admitted under oath in front an Immigration Judge, that he was a deportable alien and that he was from Jamaica. On May 23, 1990, the defendant, using the name Clarence L. Earle, pled guilty to one count of being an Illegal Alien in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(5) before the Hon. Jim R. Carrigan in the United States District Court for the District of Colorado. The defendant was then deported on January 3, 1991 from Miami.

Defendant next came in contact with United States Immigration authorities on September 26, 1992 at the Lewiston Bridge border crossing near Buffalo, New York. At that time, defendant, using the name Lamont Tippett, claimed that he was an American citizen by virtue of birth in Philadelphia on March 22, 1966. A fingerprint check ultimately revealed that he was the same person who had previously been deported under the name Clarence L. Earle. Consequently, the defendant was then arrested for Illegal Reentry of a Removed Alien in violation of 18 U.S.C. § 1326. On or about January 12, 1993, by written plea agreement and under oath in court, the defendant admitted that he was in fact an illegal alien, that he was born in Jamaica, that his true name was Eric Allen, and that he had attempted to enter the United States illegally on September 26, 1992. The defendant was found guilty of these charges, and sentenced to a term of imprisonment on March 30, 1993 before the Honorable William M. Skretny, United States District Judge for the Western District of New York.

After completing his sentence for the Western District of New York case, the defendant

was not removed from the United States, apparently due to a bureaucratic mistake.  Instead, the defendant remained here.  On February 3, 1998, the defendant was convicted of Distribution of a Controlled Substance and Assault and Battery with a Dangerous Weapon in Dorchester District Court in Massachusetts.  After this conviction, on July 10, 2002, defendant was again deported from the United States.

The defendant returned to the United States shortly thereafter, and was arrested in November 2003 for drug distribution charges.  At this time the defendant was using the name Theodore Wilson.  During the course of this arrest, the defendant waived his Miranda rights and agreed to speak with Immigration and Customs Enforcement Special Agent Eric Laforte and other agents, who were investigating the activities of a Jamaican drug smuggling ring.  During the course of this interview, the defendant stated that his real name was Eric Allen, that his actual date of birth was July 20, 1968, and that he had been born in Montego Bay, Jamaica.  Defendant admitted that he had been deported several times, including one deportation from Denver in 1990 or 1991 after he was charged with possession of firearms, and one from Boston in 2001-2002.  He then admitted that he illegally reentered the United States shortly thereafter by paying a cruise ship employee to allow the defendant to stow away aboard a cruise ship, and used the employee's identification to get past customs and immigration authorities.  The defendant has not filed any motion to suppress this statement.

In February 2004, the defendant was arrested by Richard Coleman and Jennifer Hood, who are both Immigration Agents with the Bureau of Immigration and Customs Enforcement.  At this time, he told these agents that his true name was Theodore Wilson and that he had been born in Philadelphia.  He also informed the agents that if they contacted his girlfriend "Lucille"

she would provide them with a copy of the birth certificate. Shortly thereafter, the agents contacted Lucille. Lucille provided the agents with a torn-apart-and-taped-together birth certificate in the name of Theodore Wilson, with a date of birth of July 20, 1968. She also told the agents that this birth certificate was not really the defendant's, and that the defendant was not a United States citizen.

Further investigation has revealed that the birth certificate provided by the defendant belongs to a true person. That person is currently incarcerated in Pennsylvania.

ANTICIPATED EVIDENCE AT TRIAL

A. ICE A-file Documents:

The Immigration and Customs Enforcement ("ICE") case agent and keeper of records will testify that ICE maintains records of aliens in "A-files." An A-file is the official ICE repository for proceedings and/or contacts that an alien has with ICE as well as other state and federal law enforcement agencies. Prior official ICE records contained within the A-file are records of the defendant's deportation ("Warrant of Deportation," "Order to Show Cause," "Reinstatement of Prior Order of Deportation," "Order of the Immigration Judge"), among others. In this case, the Government will seek to introduce each of the two prior Warrants of Deportation. The testimony of the ICE employees will indicate that these documents were contained in the defendant's A-file and have been so certified by the ICE district director.

B. Records of Prior Guilty Pleas Relating to the Charges in the Instant Indictment:

The government may also propose to this Court that it allow admission of a portion of the certified copy of the May 22, 1990 Plea Agreement signed by the defendant in the Colorado case. In that case, the defendant pled guilty to Possession of a Firearm by an Illegal Alien in

violation of 18 U.S.C. § 922(g)(5).  The relevant language of the plea agreement states, "The parties stipulate that at trial the government's evidence would show the following:  On January 24, 1990, Clarence Earle, a Jamaican citizen who was in the United States illegally, was arrested on an INS warrant charging him with entering the U.S. without inspection."  In addition to this language in the plea agreement the government may seek to introduce the "Judgement in a Criminal Case" issued by the District of Colorado Court in relation to this matter.

The government may also propose to this Court that it allow admission of a portion of the certified copy of the January 12, 1993 Plea Agreement signed by the defendant using the name "Eric Allen" in the Western District of New York.  In that case, defendant pled guilty to Attempted Illegal Reentry Into the United States by an Alien Previously Deported After Being Convicted of a Felony in violation of 18 U.S.C. § 1326(b)(1).  The relevant language of the plea agreement states, "The defendant and the Government agree to the following factual basis for the plea: On September 24, 1992, in the Western District of New York, the defendant, Eric Allen, did ... attempt to enter the United States at Lewiston, New York claiming to be a United States citizen by presenting a Massachusetts identification card bearing the name of Lamont Tippett.... The defendant was revealed to be Eric Allen ... on January 3, 1992 he had been deported to Jamaica from Miami, Florida."   In addition to this language in the plea agreement, the government may seek to introduce the "Judgement in a Criminal Case" issued by the Western District of New York Court in relation to this matter.

The purpose of introducing these two plea agreements and two documents, each entitled "Judgement in a Criminal Case," would be to demonstrate the defendant's alienage.  The government believes that this Court could issue a limiting instruction to the jurors that they

consider the prior judgment only for the purposes of establishing the defendant's alien status at the time of those judgments. See *United States v. Bejar-Matrecios*, 618 F.2d 81, 83-84 (9th Cir. 1980).

The government and the defendant are currently negotiating a potential stipulation regarding these two prior convictions which might allow the admission of the facts of his plea (in other words, the prior admissions under oath that the defendant in each case was an illegal alien, born in Jamaica who had been previously deported) without referring to these prior incidents as guilty pleas or convictions.

C.  Fingerprint Records and Analysis:

The ICE agent who took the defendant's fingerprints after his most recent arrest will testify that the defendant is the person whose prints he took on that date. The government will then present the testimony of a Fingerprint Examiner to offer his or her expert opinion as to whether or not the prints which were taken by the ICE agent on the date of the defendant's most recent arrest are a match to the prints taken at the time of the defendant's prior deportations (January 4, 1991 and July 10, 2002), as well as whether the prints taken on the dates of the arrests that led to the prior criminal convictions noted above are a match to the prints taken at the time of the defendant's most recent arrest.

D.  Evidence of Place of Defendant's Birth:

The government will establish the defendant's place of birth by demonstrating that he has previously stated that he was born in Jamaica, both at the times of his prior convictions and deportations and also during his recent conversation with Special Agent Eric Laforte.

E. Proof of Deportation:

The defendant's prior deportations (January 4, 1991 and July 10, 2002), both from Miami, will be established by each of the two associated "Warrant(s) of Deportation".  The defendant's deportations were both witnessed by INS personnel, and the defendant's signature and print appears on both of the two Warrants of Deportation.   See, *United States v.Loyola-Dominguez,* 125 F.3d 1315, 1318 (9th Cir. 1997) (the Warrant of Deportation, Order of the Immigration Judge, and Order to Show Cause, are documents from the A-file and are public records within the meaning of Fed. R. Evid. 803(8)); *United States v. Sotello*, 109 F.3d 1446, 1449 (9th Cir. 1997).  *United States v. Contreras*, 63 F. 3d 852, 857 (9th Cir. 1995) (the defendant's deportation was witnessed by INS personnel and the defendant's signature and print appeared on the Warrant of Deportation).

F.  Found in the U.S. Without Permission to Re-enter:

The government must prove that the person before the Court at trial is the same person who was previously deported.   To demonstrate this, the government will offer the testimony of the fingerprint examiner that the person who was deported previously is one and the same as the person now before the Court.  Thus, identity should be established.

Further, the Warrant of Deportation includes a photographic image of the person deported on January 4, 1991 and July 10, 2002, and whom the government says was and is the same person as the defendant.  As lay persons, the jurors will be qualified to look at the image and compare it to the person in front of them in the courtroom and, thus, aid in forming their own judgments as to identity.

The government must also prove that the defendant re-entered without having first

obtained either the permission to so re-enter of the Attorney General of the United States (if prior to March 1, 2003) or the Secretary of the Department of Homeland Security (if on or after March 1, 2003). To prove this element, the government will seek to introduce a "Certificate of Non-Existence of a Record," which would indicate that the defendant had not at any point sought or been granted permission to reenter the United States (the rationale and testimony being that if such permission had sought permission to re-enter, it would be indicated in the A-file). This certified record will indicate that a diligent search of ICE records has been made and that no record or entry can be found indicating that the defendant sought (and was granted) permission to re-enter the United States (Fed. R. Evid. 803(10)). The primary agent or keeper of records will also attest that he/she has diligently searched the A-file and that there are no documents indicating that the defendant sought permission (and was granted permission) to re-enter the U.S.

The government will also offer the defendant's statements to Special Agent Eric Laforte in which he admitted that he reentered the United States illegally, and described how he committed this crime.

G.   Defendant's False Statements to Immigration Officials

In addition to proving the defendant's alienage through the evidence of his prior statements, the government will also seek to introduce evidence of defendant's false statement that he is Theodore Wilson born in Philadelphia to prove that defendant is not a U.S. citizen (the rationale being that if the defendant were really a U.S. citizen by virtue of birth, he would not provide the immigration authorities with a stolen birth certificate). The government will offer into evidence the testimony of the immigration agents that the defendant made this statement to them, and the birth certificate that he had his girlfriend provide to them.

Additionally, the government will offer, pursuant to Fed. R. Evid. 803(9), the complete record from the Pennsylvania Department of Health regarding Theodore Wilson's birth certificate, which includes Mr. Wilson's father's and mother's names.  The government will also offer the testimony of Theodore Wilson's sister, a Philadelphia police officer, that the defendant is not Theodore Wilson.  The government may also call the real Theodore Wilson himself to testify that he, and not the defendant, is the person named in the birth certificate.  Finally, the government may call "Lucille," the defendant's girlfriend, to testify that the defendant told her to give the immigration agents this birth certificate, but that she knew that it was not really the defendant's birth certificate and that he was not a U.S. citizen.

## EVIDENTIARY ISSUES

The government believes that the A-file Documents and Conviction Documents are admissible per Fed. R. Evid. 803(8)(A) and (B), 803(22), 902(1) and (4).  The testimony of the primary agent and keeper of records will, presumably, provide the foundational basis for the admissibility of the exhibits to be drawn from the A-file.

These same A-file documents fall within the public records exception to the hearsay rule. *See, United States v. Loyola-Dominguez,* 125 F.3d 1315, 1318 (9th Cir. 1997) (the Warrant of Deportation, Order of the Immigration Judge, and Order to Show Cause, are documents from the A-file and are public records within the meaning of Fed. R. Evid. 803(8)(B)).  The certified records of the defendant's previous criminal convictions also fall within this exception to the hearsay rule.

The government anticipates that it will establish that the defendant's fingerprint as it appears on the prior Warrant(s) of Deportation match the fingerprints taken from him on the date

of his most recent arrest (when he was "found" in the District of Massachusetts); *See United States v. Gilbert,* 774 F.2d 962, 964-65 (9th Cir. 1985) (The routine act of reporting on fingerprints is no different from inventorying items seized. The act of recording fingerprints is ministerial, objective, and non-evaluative and falls within the public records exception of Rule 803(8)(B)).

The defendant's statements to Special Agent Eric Laforte are admissible because the defendant properly waived his Miranda rights and agreed to talk to the agent. The defendant has not contested the admissibility of these statements. Similarly, the defendant has not contested the admissibility of the statements he made to the immigration agents regarding his claim to be Theodore Wilson.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Seth P. Berman
       SETH P. BERMAN
       Assistant U.S. Attorney

Dated: March 15, 2005

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

>Paul Markham, Esq.
>58 Orient Street
>Melrose, MA 02176

This 15th day of March, 2005.

>/s/ Seth P. Berman
>SETH P. BERMAN
>Assistant U.S. Attorney