UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____

No. 04-CR-10065-MLW
_____

UNITED STATES

v.

CLARENCE EARLE

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

The defendant Clarence Earle has moved that the Court enter an order suppressing all statements the defendant allegedly made in response to questioning by ICE Special Agent Eric LaForte following Earle's arrest on November 6, 2003, and in response to questioning by ICE Immigration Agent Richard Coleman following Earle's arrest on February 12, 2004 because the agents failed to provide the warnings required by Miranda v. Arizona, 384 U.S. 436, 479 (1966), and recently reaffirmed by Dickerson v. United States, 530 U.S. 428, 438-40 (2000).

According to the attached Report of Investigation by ICE Special Agent Eric LaForte, the defendant was arrested by Boston Police Department Detectives and ICE agents on November 6, 2003. The basis of the arrest is not clear from the report. According to the report, the defendant made a number of admissions to ICE agents LaForte, Peter Pasciucco, and Peter Darling. In their report, the agents assert that at the beginning of the interview, the defendant was asked if he had previously been advised on his rights and he stated that he had in fact been so advised. The agents

do not claim that they advised the defendant of his rights. The defendant denies that he had been advised of his rights.

The defendant was held in custody following his appearance in the Dorchester District Court on November 7, 2003. When he was brought to court on February 12, 2004, his bail was reduced to personal recognizance and he was taken into custody by Immigration Agent Richard Coleman. According to the attached report of Agent Coleman, the defendant made a number of admissions. The defendant asserts that he was not given his Miranda warnings.

The law is straight-forward. Under the Court's decision in Miranda, the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. The Miranda warnings are that a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning is he so desires." 384 U.S. at 479. The constitutional basis of the Miranda decision was recently re-affirmed in Dickerson, 530 U.S. 428, 438-40.

The government bears a heavy burden of showing that the defendant waived his constitutional right. Miranda, 384 U.S. at 475.

Interrogation occurs when law enforcement officers subject a person to either express questioning or its functional equivalent. In Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the Court explained:

> That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Under Innis, a court should ask if the challenged approach to a defendant was designed to elicit a response. 446 U.S. at 303.

        Respectfully submitted
        The defendant Clarence Earle
        By his attorney

        /s/
        _____
        Charles W. Rankin
        BBO 411780
        Rankin & Sultan
        1 Commercial Wharf North
        Boston, MA  02110
        (617) 720-0011

REQUESTED BY: SANSONE, WILLIAM

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. TECS ACCESS CODE 3 |
|---|---|
| | 2. PAGE 1 |
| REPORT OF INVESTIGATION | 3. CASE NUMBER BO13CR04BO0005 |

4. TITLE: MARY POWELL, ET AL.

5. CASE STATUS: INTERIM RPT

| 6. REPORT DATE 120103 | 7. DATE ASSIGNED 102403 | 8. CLASS 3 | 9. PROGRAM CODE 301 | 10. REPORT NO. 005 |
|---|---|---|---|---|

11. RELATED CASE NUMBERS:

12. COLLATERAL REQ:

13. TYPE OF REPORT:
    INVESTIGATIVE FINDINGS
/   MEMO OF INTERVIEW

TOPIC: ARREST AND INTERVIEW OF THEODORE "RICK" M. WILSON

14. SYNOPSIS:
Agents from SAC/Boston U.S. Immigration and Customs Enforcement (ICE) received reliable information that Mary POWELL would be travelling to Jamaica on 10/23/03 via Miami. The purpose of this trip is to smuggle cocaine into the Boston, MA area. Agents conducted surveillance and confirmed that POWELL did in fact board a flight to Miami and was ultimately destined for Jamaica.

On November 6, 2003, agents from SAC/Boston ICE and detectives from the Boston Police Department arrested Theodore "Rick" M. WILSON in Boston, MA. Subsequent to his arrest, agents interviewed WILSON at Boston Police Department's Area C-11 Station. The following is an account of the arrest and information obtained during the interview.

| 15. DISTRIBUTION: SACBO | 16. SIGNATURE: LAFORTE ERIC SPECIAL AGENT |
|---|---|
| | 17. APPROVED: NAGLE JAMES P OI GRP SUPERVISOR |
| | 18. ORIGIN OFFICE: BO BOSTON, MA - SAC | 19. TELEPHONE: 617 565 7435 |
| | | 20. TYPIST: LAFORTE |

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

```
              DEPARTMENT OF HOMELAND SECURITY       1. PAGE    2
                          ICE
                                                    2. CASE NUMBER BO13CR04BO0005
   R E P O R T  O F  I N V E S T I G A T I O N
                C O N T I N U A T I O N            3. REPORT NUMBER: 005
```

DETAILS OF INVESTIGATION:

On November 6, 2003, agents from SAC/Boston ICE and detectives from the Boston Police Department arrested Theodore "Rick" M. WILSON in Boston, MA. Subsequent to his arrest, agents interviewed WILSON at Boston Police Department's Area C-11 Station. The following is an account of the arrest and information obtained during the interview.

At approximately 2:30 p.m. SAC/Boston ICE agents set up a surveillance on Talbot Street in Dorchester, MA. Agents had previously received information that WILSON had a daughter in this area that he routinely drove to an after school program.

At approximately 3:30 p.m. Agents left the Talbot Street area and set up at 36 Franklin Hill Avenue, Dorchester, MA after observing the blue Plymouth Neon WILSON was reportedly using parked on the street nearby (the vehicle was registered to this address).

At approximately 5:30 p.m., Agent Eric LaForte met with SA-563-BO at the Bay Side Exposition Center in Dorchester, MA. SA-563-BO offered to set up a meeting with WILSON to discuss the gold Honda WILSON had been using; this vehicle had been impounded a few days prior.

WILSON told SA-563-BO that he needed to find a ride, but that he would meet with him. After changing the meeting location a couple of times, SA-563-BO and WILSON agreed to meet at the Star Market on Morrissey Boulevard (near the JFK/Red Line MBTA train station) in Dorchester, MA.

At approximately 7:15 p.m. Detectives from the Boston Police Department's area C-11 Narcotics Unit and agents from SAC/Boston ICE arrested WILSON in front of the Boston Globe at 135 Morrissey Boulevard, Dorchester, MA. BPD Detectives then transported WILSON to the area C-11 station for booking and processing.

Special Agents Eric LaForte, Peter Pasciucco, and Peter Darling began the interview of WILSON at approximately 7:45 p.m. in a second floor interview room at the station. Agents initiated the interview by asking WILSON if he had been advised of his rights and if he understood them. WILSON stated that he did.

Agents then asked if Theodore M. WILSON was an alias, and if so, what his name at birth was. WILSON claimed that his name at birth was Eric ALLEN and that his actual date of birth is July 20, 1968 (for simplicity, the subject will continue to be referred to as WILSON). WILSON stated that he was born in Montego Bay, Jamaica.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE  REPORT OF INVESTIGATION CONTINUATION | 1. PAGE   3 |
|---|---|
| | 2. CASE NUMBER BO13CR04BO0005 |
| | 3. REPORT NUMBER: 005 |

WILSON told agents that he has three (3) children: a thirteen year old daughter named Shauna, a six year old daughter named Jada, and an infant boy named Eric. WILSON is not married.

WILSON claimed that he first came to the United States from Jamaica in 1980 as Eric Allen. WILSON first came to the Boston, MA area; WILSON then traveled to Denver, CO.

WILSON was deported from Denver around 1990-'91. WILSON was deported after being arrested for a possession of a firearm charge; WILSON served one (1) year in prison as a result of this charge.

Five (5) years later, WILSON admitted that he illegally reentered the United States. WILSON stated that he paid $500 to a Cruise Line employee. The employee then allowed WILSON to stay in his quarters for the duration of the Jamaica to Miami, FL cruise. Once in Miami, WILSON stated that the crewmember allowed WILSON to use the crewmember's identification to get past both Customs and Immigration officials.

Once back in the United States WILSON traveled from Miami, FL to the Boston, MA area.

WILSON was deported from the Boston, MA area around 2001-'02 after another possession of a firearm charge; WILSON spent one (1) year in prison for this charge, also, before being deported.

WILSON then admitted to illegally reentering the United States for a second time in the exact same manner as his first reentry.

WILSON claimed that his only relative living in Jamaica was a sister.

WILSON was then asked about his involvement with the "Mary J. POWELL, et al" case. WILSON claimed that POWELL "wanted to go on vacation" and then stated "I just helped her out". WILSON admitted that he called her at her hotel once she was in Jamaica. WILSON was unable to clearly explain how he ascertained the phone number at the hotel she was staying at.

WILSON told agents that he arranged to have a friend of his pick POWELL up at the airport in Jamaica and take her to a hotel. WILSON's friend's name is Paul LNU. WILSON claimed that he called Paul two or three times while POWELL was in Jamaica, though he used a calling card and has since thrown it (the calling card) away. WILSON stated that he believed POWELL had $300-$400 dollars on her person when she arrived in Jamaica. "Paul was supposed to drop POWELL off to "Swany's" people in Jamaica.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF HOMELAND SECURITY ICE | 1. PAGE    4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | 2. CASE NUMBER BO13CR04BO0005 |
| | 3. REPORT NUMBER: 005 |

WILSON stated that Paul was supposed to bring her to the airport for her return trip. Paul also checked on POWELL daily according to WILSON. WILSON told agents that he gave Paul's number to "Swany".

WILSON told agents that the cocaine was not being brought back for him. WILSON stated that the drugs were for "a kid in Rhode Island". WILSON stated that he only knew this person as "Swany".

WILSON stated "I knew him from here in Boston". WILSON met "Swany" around 1998. WILSON told agents that "Swany" drives a yellow Grand Am. WILSON described "Swany" as a tall black male, skinny, dark skinned, with scruffy facial hair. WILSON stated that "Swany" was born in the U.S. but had Jamaican parents.

WILSON told agents that the last time he saw "Swany" in person was after POWELL called to say that she would be late (October 30, 2003). This meeting took place on a street off of Blue Hill Avenue in Dorchester, MA. WILSON stated that the last time he talked to "Swany" was "four or five days ago". Agents looked through the "phonebook" function of WILSON's cell phone and found an entry listed as "Swany". The phone number for this entry was 401-369-5243. This is the number that POWELL called from Miami International Airport the night that she was arrested.

The subscriber information for this phone number is listed by AT&T Wireless as Heidianne BOYKIN, 46 Cottage Street, Woonsocket, RI. This account was cancelled on or around November 1, 2003.

According to WILSON, POWELL was to be paid $1500 dollars for her part in this smuggling operation. WILSON said of "Swany": "he was gonna pay me $1000". WILSON told agents that he did not know how much cocaine POWELL would be bringing back; he was only interested in the money (that he would be paid).

WILSON claimed that he had never purchased tickets at Fernandez Travel in Dorchester, MA before purchasing tickets for POWELL. WILSON then corrected himself and admitted that he had bought tickets there in 1994, but countered "those tickets were for me". WILSON stated that Fernandez (Travel) did not ask for identification and did not ask any questions. WILSON stated "I put $100 in and Swany put in the rest" describing how he paid for the tickets he purchased for POWELL to travel round-trip to Jamaica.

When asked how he came to know POWELL, WILSON answered that "Swany" knew her. "I just helped out with the tickets". WILSON, speaking of "Swany" stated "he drove her to the airport". WILSON admitted, "I was supposed to pick her up" (at Logan International Airport, Boston, MA).

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

```
      DEPARTMENT OF HOMELAND SECURITY          1. PAGE    5
                    ICE
                                               2. CASE NUMBER BO13CR04BO0005
   R E P O R T  O F  I N V E S T I G A T I O N
          C O N T I N U A T I O N              3. REPORT NUMBER: 005
```

WILSON continuing to describe what he knows about "Swany", stated that "he sells crack (cocaine-base)". WILSON does not know where "Swany" lives but believes he lives in Rhode Island; "Swany" frequently visits his girlfriend on Faiston Street in Dorchester, MA.

WILSON told agents that he does not know if this is the first time "Swany" sent someone to Jamaica to smuggle cocaine.

Agents asked WILSON about the outstanding warrant from the Boston Police department (cocaine distribution, etc.). WILSON stated that he was not selling crack, though he admitted he was selling marijuana. WILSON claimed that he would sell hydroponic and regular marijuana. He would buy an ounce from Dave LNU for $175. WILSON claimed that he only sold to "four or five" people.

At the end of the interview WILSON was again asked if he knew what kind of car "Swany" drives. This time WILSON stated that he drives a blue 1999 Grand Am with Massachusetts plates.

Agents asked WILSON if he knew of any other individuals involved with drug smuggling. WILSON stated that he "knew a guy in D.C. that did it before". This person has people smuggle cocaine from Jamaica into Baltimore. WILSON claimed that the people smuggled the drugs in suitcases.

WILSON claimed that he was offered $3,000 to take a trip for the person. WILSON claimed the person told him the suitcase he would bring back from Jamaica would contain approximately 500 grams of cocaine. WILSON told agents that he knew the people involved as Gary LNU and Paul LNU. WILSON told agents that he has not been to Gary and Paul's house in the past five months.

WILSON claimed that the last time he stayed with Gary and Paul he was in the area to shop for his daughter. WILSON claimed that people stayed there for two-week stints and were "in and out of the bathroom" for the first few days. WILSON stated that after two weeks the people went back to Jamaica.

WILSON stated that he had Gary and Paul's phone number in his "little black book" at an address Dorchester, MA. Agents are currently trying to track down this book.

Investigation continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

**U.S. Department of Justice**
Immigration and Naturalization Service

# Record of Deportable/Inadmissible Alien

| Family Name (CAPS) | First | Middle | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|
| EARLE, Clarence | | | M | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| JAMAICA | | Case No: BOS0402000158<br>A028 488 757 | 65 | 140 | LABORER |

Scars and Marks

U.S. Address
36 FRANKLIN HILL
DORCHESTER, MASSACHUSETTS 02124

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☒ Single ☐ Divorced ☐ Married<br>☐ Widower ☐ Separated |
|---|---|---|---|
| Unknown Date, Unknown Time, UNK, UNKNOWN TIME | UNKNOWN, | 705963KA6 | |

Number, Street, City, Province (State) and Country of Permanent Residence

Method of Location/Apprehension
L 511.2.3

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 10/29/1967   Age: 36 | 02/12/2004 | BOS/BOS | Boston, MA | 02/12/2004  1457 |

| City, Province (State) and Country of Birth | AR ☒ | Form: (Type and No.) | Lifted ☐ | Not Lifted ☐ | By |
|---|---|---|---|---|---|
| OTHER, JAMAICA | | | | | RICHARD J. COLEMAN |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | PWA Other | IN INSTITUTION |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | | OVER 1 YEAR |

| Immigration Record | Criminal Record |
|---|---|
| NEGATIVE | See narrative |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|

| Father's Name, Nationality, and Address, if Known  Nationality: JAMAICA<br>DAVID, Earle<br>DECEASED | Mother's Present and Maiden Names, Nationality, and Address, if Known<br>THOMPSON, Myrtle<br>SFA |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted?  Yes ☒  No ☐ | INS Systems Checks<br>CIS Positive | Charge Code Word(s) |
|---|---|---|---|

| Name and Address of (Last)/(Current) U.S. Employer | Type of Employment | Salary Hr. | Employed from/to  / /   / / |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

OTHER ALIASES KNOWN BY
ALLEN, ERIC
TIPPIT, LEMOUNT
WILSON, THEODORE

MOTHER'S NATIONALITY
JAMAICA

Narrative Title: Record of Deportable/Excludable Alien
Narrative Created by BRUCE

APPREHENSION/LOCATION: Subject encountered at Dorchester District Court through the Criminal Alien Identification System (CAIS). Subject appeared to have reentered the United States after deportation. A detainer was filed with the court.
IMMIGRATION HISTORY: Subject has been removed from the United States on two separate occasions, most recently on July 10, 2002 at Miami, FL via American Airline Flight 881. Subject reentered the United States on an unknown date at or near an unknown place without authorization from the Attorney General.
CRIMINAL HISTORY:
Subject plead guilty on 3/29/1993 to Attempted Reentry of a Previously Deported Alien in the U.S. District Court, Western District of New York. For this offense he was sentenced

Alien has been advised of communication privileges  2-12-2004 (Date/Initials)

RICHARD J. COLEMAN
IMMIGRATION AGENT
(Signature and Title of INS Official)

Distribution:
File
Norcross
D&R

Received: (Subject and Documents) (Report of Interview)
Officer: RICHARD J. COLEMAN
on: February 13, 2004 at _____ (time)
Disposition: REINSTATEMENT OF DEPORT ORDER I-871
Examining Officer: PAUL STERLING

Form I-213(Rev. 4/1/97)Y

0176

| U.S. Department of Justice | | Continuation Page for Form I-213 |
|---|---|---|
| Immigration and Naturalization Service | | |

| Alien's Name | File Number<br>Case No: BOS0402000158<br>A028 488 757 | Date<br>02/12/2004 |
|---|---|---|
| EARLE, Clarence | | |

to 8 months imprisoned. The original indictment also contained a charge of False Claim to U.S.C., but this was dropped as part of a plea agreement.
Subject was convicted on October 21, 1993 of Possession of a Firearm without ID card & Possession of a Firearm, No Home to Work License and was sentenced to 1 year in the House of Correction.
Subject was also convicted on February 21, 1998 of Possession of a Class D Substance with Intent to Distribute. Subject was also convicted on that date of Manufacturing/Distributing/Dispense of a Class D Substance, and Possession with Intent to Distribute Drugs in a School Zone. For these offenses, the subject was sentenced to 18 months in the House of Correction.
According to the subjects Massachusetts board of Probation record, he also has arrests during 2003 for drug related offenses. These charges are still pending.
FAMILY IN U.S.: None
Subject makes no claim to welfare.
Subject makes no claim to pending applications.
Subject makes no claim to prior military.
Subject CLAIMED to both Agent Richard Coleman and Agent Jennifer Hood to be a Native United States Citizen born in Philadelphia, PA. Subject claimed to have reentered the United States using his USC Birth Certificate. He states that a Ms. "Luccill" would be able to provide this birth certificate. Subject stated "Luccill's" phone # is 617-296-1593. Subject was contacted on 2/12/2004 and stated that she did have this birth certificate in her possession and would provide it to this Agent. The birth certificate was recovered from Ms. "Luccille" on 2/17/2004 by Agent Richard Coleman.

Recommend presentation of this case to the United States attorneys office for Reentry After Deportation (8 USC 1326) and False Claim to United States Citizenship (18 USC 911).

| Signature<br>RICHARD J. COLEMAN | Title<br>IMMIGRATION AGENT |
|---|---|

2 of 2 Pages

Form I-831 Continuation Page (Rev. 6/12/92)

0174