UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 04-CR-10065-MLW |
| ) | |
| CLARENCE EARLE ) | |

### GOVERNMENT'S PROPOSED FINDINGS OF FACT AND LAW

On October 7, 2005, this court held an evidentiary hearing to determine the admissibility of a statement made by the defendant on November 6, 2003. Two witnesses testified at the hearing, Lt. Daniel Linskey of the Boston Police Department, and Police Officer Peter Pasciucco. At the conclusion of the hearing, the Court asked the parties to propose findings of fact and findings of law related to the following three issues that arose from the testimony: 1) Was the defendant read his Miranda rights?; 2) Does the law impose an obligation on the Government to determine whether the defendant understands his rights and has voluntarily waived them?; and, 3) Did the defendant knowingly and voluntarily waive his rights in this case? This memorandum addresses these issues.

**Proposed Findings of Fact:**

1) On November 6, 2003, Boston Police Officers, working with federal officials, were investigating a Jamaican drug smuggling ring. Tr. at 12-13, 54-55.[1]

2) During the course of that investigation, the officers and agents learned from an informant that the defendant was involved in the ring. Tr. at 13, 65. The officers and agents also learned that there was an open arrest warrant for the defendant. Tr. at 12, 55.

---

[1] Throughout this memorandum, references to the Transcript of the October 7, 2005 hearing are cited as Tr. at –, and references to exhibits admitted into evidence at the hearing are cited as Ex. –.

3) One reason the agents arrested the defendant was to convince the defendant to cooperate in their ongoing investigation of the drug smuggling ring. Tr. at 55 and 76.

4) On November 6, 2003, the defendant was arrested on Morrissey Boulevard in Boston, Massachusetts. Tr. at 13, 33-38, 56-57, 68-72.

5) Immediately after his arrest, the defendant was read his Miranda warnings by Lt. (then Sergeant) Daniel Linskey. Tr. at 14-15, 17-19, 38-40, 51-52, and Ex. 1. Officer Pascucco also heard the defendant being read his Miranda rights at the scene. Tr. at 57, 70-71.

6) After he was arrested, the defendant was brought to Boston Police Department Area C-11 for booking. Tr. at 20-21, 57-58, 72-73.

7) During the booking process, Lt. Daniel Linskey gave the defendant a printed copy of the Miranda questions. Tr. at 21-24. Though these questions were not re-read to the defendant at that time, Lt. Linskey told the defendant that these were the rights he had been read earlier, and told the defendant to "sign here stating for (sic) the rights I read you earlier." Tr. at 23 and 48.

8) The defendant signed the printed Miranda form. Tr. at 23-24, 48. In addition to restating the Miranda questions, the printed form signed by the defendant included an explicit statement that the defendant understood his Miranda rights. Ex. 2.

9) Shortly after the defendant signed the Miranda form described above, the defendant was brought to a detective interview room. Tr. at 25, 49-50, 58-59. This occurred within one hour of his arrest, and within half an hour of his arrival at C-11. Tr. at 24-25, 42, 57-58.

10) Once inside the interview room, Officer Pasciucco asked the defendant if he had been advised of his rights downstairs. Tr. at 59. The defendant stated that he had. Tr. at 59.

Officer Pasciucco then asked the defendant if he understood those rights. Tr. at 59. The defendant again stated that he did. Tr. at 59.

11) Defendant's confirmation to Police Officer Pasciucco that he had been read his rights "downstairs" proves two key facts: First, the defendant had in fact been advised of his Miranda rights prior to questioning. Second, the defendant understood that the document he signed in the booking room (which is downstairs from the interview room) constituted his Miranda rights.

12) Before the defendant made his statement, the defendant was told by the agents that they wanted him to cooperate with them in their ongoing investigation of the drug smuggling ring. Tr. at 76. The conversation between Officer Pasciucco and was a casual conversation, which Officer Pasciucco described as "just shooting the breeze a little bit." Tr. at 75.

13) Defendant waived his Miranda rights by continuing to talk to Officer Pasciucco and other agents after the defendant confirmed that he had been advised of his rights and that he understood them. Defendant's failure to invoke those rights, Tr. at 25-26, 61-62, and his decision instead to talk to Officer Pasciucco and others, constituted a knowing and intelligent waiver of his rights.

14) After confirming that the defendant had been advised of his rights and that he understood them, Officer Pasciucco and the other agents in the room talked to the defendant, and asked him to clarify his real name. Tr. at 59-61, 75-77.

15) During this discussion, the defendant stated that his real name was Eric Allen, that he was born in Jamaica, that he had been convicted of a gun crime in Colorado, and had twice been deported from the United States, once from Colorado and once from Boston. The

defendant also stated that he reentered the United States illegally by paying a cruise ship employee to allow the defendant to stow away on a cruise ship from Jamaica to Miami, and then entered the United States in Miami by using that crew member's identification. Tr. at 59-61, 75-79.

16) English is the defendant's native language. He has attended school and is able to read and write.[2]

17) The defendant has a long history of experience with the criminal justice system, including several state convictions and two federal convictions.

18) At no point on November 6, 2005, did the defendant invoke his right to remain silent or his other Miranda rights. Tr. at 25-26, 61-62.

**Argument**

Before a custodial statement can be admitted as evidence in its case in chief, the government must show that the defendant was advised of his rights, that he "'waive[d] the effectuation' of the rights conveyed in the warnings[,] ... [and] 'that the waiver [was] made voluntarily, knowingly, and intelligently.'" Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140-1141, (1986) quoting, Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 1628 (1966). See, also, North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755 (1979).

In determining whether the defendant's waiver of Miranda rights was voluntary, the Court must examine "the totality of the circumstances and the facts surrounding the particular case, 'including the background, experience, and conduct of the accused.'" United States v. Garcia, 983 F.2d 1160, 1169 (1st Cir. 1993), quoting, Butler, 441 U.S. at 374-375, 99 S.Ct. at

---

[2] These fact comes from the defendant's arraignment in front of J. Wolf in April.

1758.  A defendant can waive his rights implicitly – there is no requirement that the waiver be explicit.  "An express waiver is not required." Garcia, 983 F.2d at 1169.  See also, Butler, 441 U.S. at 375-376, 99 S.Ct. at 1758-1759 (same); and Bui v. DiPaolo, 170 F.3d 232 (same).

In this case, the defendant waived his Miranda rights implicitly.  By responding to Officer Pasciucco questions after the defendant acknowledged that he had received his Miranda warnings and that he understood them, the defendant knowingly and intelligently waived these rights.  The First Circuit offered the following non-exhaustive list of cases in which implied waiver had been found:

> There are certain types of cases in which courts routinely conclude that a defendant who has professed an understanding of his right to remain silent has waived that right. For example ... if a defendant's incriminating statements were made either as part of a "steady stream" of speech or as part of a back-and-forth conversation with the police, courts regularly have found waivers.  A waiver of Miranda rights also may be implied when, after having received Miranda warnings, a criminal defendant responds selectively to questions posed to him.

Bui, 170 F.3d at 240 (internal citations omitted).  Here the exchange between the defendant and the agents was part of an back-and-forth conversation.  In officer Pasciucco's words, the defendants and the agents "were just shooting the breeze a little bit" prior to the defendant's confession. Tr. at 75.  Moreover, it is significant that the defendant's decision to waive his rights was not irrational under the circumstances.  The evidence at the hearing showed that one purpose of arresting the defendant was so that the officer could ask him to assist in their investigation of a Jamaican drug smuggling ring. Tr. at 55.  The agents informed the defendant of this purpose before they question him. Tr. at 76.  Thus, the defendant's decision to talk to the agents was a rational choice.  The fact that a defendant's decision to waive his rights was rational is a factor that courts have taken into account in deciding whether a defendant implicitly waived his rights.

"[Defendant's] subsequent admissions ... were not confessions wrested from a reluctant detainee ... [defendant] had a rational reason for *choosing* not to remain silent." United States v. Andrade, 135 F.3d 104, 108 (1st Cir. 1998) (emphasis in original).  Here, the defendant's conversation with Officer Pasciucco and the other agents clearly constituted an implicit but knowing waiver of his Miranda rights.[3]

The uncontradicted evidence presented at the hearing clearly established that defendant had been advised of his Miranda warnings at least once at the scene of his arrest (and possibly twice).  Tr. at 14-15, 17-19, 38-40, 51-52, 57, 70-71 and Ex. 1.  The evidence further shows that the defendant was presented with and signed a written copy of his Miranda warnings during the booking process, and that the Miranda form included an explicit acknowledgment that the defendant understood his rights.  Tr. at 23-24, 48 and Ex. 2.  Finally, the uncontradicted evidence demonstrates that the defendant explicitly acknowledged to Officer Pasciucco that he had been read his rights, and that he understood them.  Tr. at 59.  Though the defendant did not explicitly waive his Miranda rights, he implicitly waived them by continuing to talk to Officer Pasciucco

---

[3] Defendant cites United States v. Christian, 571 F.2d 64 (1st Cir. 1978), and United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985), for the proposition that merely answering questions after receiving warnings and acknowledging that the warnings are understood does not constitute a valid waiver of the rights.  These cases predate Butler, Garcia and Bui.  Thus, they cannot be relied up as valid precedent.  Moreover, they are easily distinguishable from the instant case.  In Porter, the Court suppressed a statement because the defendant had implicitly invoked his right to counsel, after which questioning ought to have ceased, not because his confession was insufficient in and of itself to demonstrate a waiver.   Similarly, in Christian, the defendant explicitly refused to sign a waiver before he talked to the agents, thereby fatally undermining the claim that his subsequent silence on the subject of consent coupled with a confession constituted an implicit waiver.  Here, the totality of the circumstance shows that the defendant's waiver was knowing and intelligent.  The defendant speaks and understands English, is familiar with the criminal justice system, and had a rational reason to waive his rights.  Unlike either the defendants in either Porter or Christian, the defendant never asserted his right to counsel or to remain silent in the first place.

and the other agents after he had acknowledged that he understood his rights. These facts, taken together, complete the analysis:

> Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

Moran, 475 U.S. at 422-423, 106 S.Ct. at 1141.

Given the defendant's background, including his extensive experience in both the state and federal criminal justice systems, and the fact that English is his native language, combined with the fact that the defendant's decision to waive his rights was rational under the circumstances, there is no reason for the Court to conclude that the defendant's explicit statement that he had been read his rights and that he understood those rights means anything other than what the defendant clearly stated. This is especially true given the fact that the other uncontradicted evidence presented at the hearing – the evidence that the defendant had been read his rights at the scene, and that he had signed a written version of his rights, corroborates the defendant's own statement that he had been read his rights and that he understood them. Though defendant can now speculate that he may not have heard or understood his rights when they were read to him – this claim is directly contradicted by defendant's statements and actions on the day of his arrest.

At the hearing, the defendant implied that his acknowledgment that he had been read his rights and that he understood them is somehow undermined by the fact that Officer Pasciucco did not re-read Miranda rights to the defendant. However, there is no requirement that a defendant be continually readvised of his Miranda rights. See, e.g., United States v. Weekley, 130 F.3d 747, 751 (6th Cir. 1997) (collecting cases). This is true even when the questioner is a

7

different person from the person who initially read the defendant his rights.  See, e.g., United States v. Balkcom, 735 F.2d 1242, 1254 (11th Cir. 1984) ("the fact that [the defendant] confessed to a state officer other than the one who administered the Miranda warnings, does not render the warnings insufficient").  Nor does the passage of time from when the defendant was first read his rights until he was questioned impact the validity of the waiver.  The First Circuit has ruled that even after a four hour delay between the Miranda warnings and a subsequent interview, a defendant was sufficiently warned of his Miranda rights after he was asked by an agent if he remembered the rights that had been read to him earlier:

> Here, we have no reason to doubt that [the defendant] knew that he had a right to remain silent; at the outset of the second round [of questioning], [the agent] reminded him of the earlier warnings, and [the defendant] confirmed that he remembered.

Andrade, 135 F.3d at 107.

## Conclusion

For these reasons, the United States asks this Court to deny Defendant's Motion to suppress the defendant's November 6, 2003 statement.

>                          Respectfully submitted,
>
>                          MICHAEL J. SULLIVAN
>                          United States Attorney
>
>                  By:     /s/ Seth P. Berman
>                          SETH P. BERMAN
>                          Assistant U.S. Attorney

Dated:      October 14, 2005