UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____

No. 04-CR-10065-MLW
_____

UNITED STATES

v.

CLARENCE EARLE
_____

**DEFENDANT'S RESPONSE TO
GOVERNMENT'S PROPOSED FINDINGS
OF FACT AND LAW**

The Court held an evidentiary hearing on the defendant Clarence Earle's Motion to Suppress on October 7, 2005. Pursuant to the Court's October 7, 2005 Order, both parties filed post-hearing memoranda on October 14, 2005. The defendant argued that the motion to suppress should be allowed as the Government had not carried its burden of showing that the defendant had been adequately informed of his Miranda rights or that the defendant had made an actual and knowing and intelligent waiver -- explicit or implicit -- of his rights. This response is submitted to address issues raised in the Government's Proposed Findings of Fact and Law ("Proposed Findings").

**I.     THE GOVERNMENT HAS NOT DEMONSTRATED THAT THE DEFENDANT WAS ADEQUATELY INFORMED OF HIS RIGHTS.**

The Government does not address the issue, clearly raised during the course of the evidentiary hearing, of whether the fact that Officer Linskey may have read the Miranda rights aloud in the vicinity of the defendant at the scene of the arrest, while the defendant was being physically

restrained and in the presence of shouting officers and passing automobile traffic, is sufficient to constitute an adequate and effective statement of Miranda rights. The defendant contends that such a perfunctory recitation, with no possibility or even intention that the defendant understand what was being read to him, is insufficient.

In support of its contention that the defendant was adequately informed of his rights, the Government relies heavily upon the events that took place during the booking and interrogation at the police station. The Government contends that the defendant was informed of his rights by the booking sheet that he signed, and that he confirmed this fact upon questioning in the interview room. See Proposed Findings at 6. These contentions are unavailing, as they are not supported by the record.

Officer Pasciucco testified that, at one point during his interrogation of the defendant, he asked him whether "he had been read his rights downstairs" and whether "he understood them." 10/7/2005 Transcript ("Tr.") at 59. Pasciucco testified that the defendant said, "Yes." Id. With respect to this testimony the Government writes:

> Defendant's confirmation to Police Officer Pasciucco that he had been read his rights "downstairs" proves two key facts: First, the defendant had in fact been advised of his Miranda rights prior to questioning. Second, the defendant understood that the document he signed in the booking room (which is downstairs from the interview) constituted his Miranda rights.

Proposed Findings at 3. In so arguing, the Government elides the crucial and undisputed fact: the defendant was *not* "read" his rights "downstairs." The defendant's purported (and, if made, undisputedly false) statement that he had been read his rights downstairs at the police station therefore provides no support whatsoever for either the proposition that the defendant had been read

his rights *at the scene of his arrest* or the proposition that the defendant had read his rights *to himself*. The Government's attempt to misuse this statement for these purposes should not be accepted. The Government has not met its burden of demonstrating that the Miranda warnings were effectively conveyed to the defendant.

**II.   THE GOVERNMENT HAS NOT CARRIED ITS BURDEN OF DEMONSTRATING THAT THE DEFENDANT UNDERSTOOD HIS RIGHTS.**

As the defendant argued in his post-hearing memorandum, in order to demonstrate that the defendant effected a "knowing and intelligent" waiver, the Government must show that the defendant had "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government asserts in part, in an attempt to meet its burden on this issue, that the defendant is a native speaker of English and can read and write, and that he has a long history of experience with the criminal justice system. Proposed Findings at 4. This argument is not persuasive.

First, the Government asserts that "English is the defendant's native language. He has attended school and is able to read and write." Id. In a footnote, the Government states: "These fact [sic] comes from the defendant's arraignment in front of J. Wolf in April." Id. at 4 n.2. However, this evidence is not before the Court on the motion to suppress as the Government did not introduce testimony on the point, introduce a transcript of the prior proceeding, or request the Court to take judicial notice of the prior hearing.[1]  Therefore, the purported facts regarding the defendant's

---

[1] The Court explicitly stated at the conclusion of the evidentiary hearing that "The record is closed." Tr. at 91.

education and knowledge of English cannot be considered by this Court in determining whether the Government has met its burden of proof.

Second, the Government argues that the defendant has "extensive experience in both the state and federal criminal justice systems." Proposed Findings at 7. As this Court noted, Tr. at 84, prior experiences with the criminal justice system can be considered in determining whether a defendant's waiver of rights is knowing and intelligent. However, the Government failed to present evidence that the defendant had been read his Miranda rights on any of those occasions. Surely the only reason prior experience would be relevant to a defendant's understanding of the Miranda rights would be if the defendant was informed of his rights on those occasions; the simple act of being arrested or incarcerated certainly does not, in and of itself, impart any understanding of constitutional doctrine. Here, the Government did not present any evidence that the defendant had his Miranda rights explained to him on prior occasions, and therefore the defendant's prior experience with the criminal justice system should be given little weight by the Court.

### III. THE GOVERNMENT HAS NOT MET ITS BURDEN OF DEMONSTRATING THAT THE DEFENDANT ACTUALLY WAIVED HIS MIRANDA RIGHTS.

In his memorandum, the defendant contended that the Government had introduced no evidence beyond the simple fact that he answered the Government's questions to support the conclusion that the defendant actually waived his Miranda rights, and that such evidence is insufficient as a matter of law to meet the Government's burden of proof.[2]

---

[2] The Government contends that the defendant's citations to United States v. Christian, 571 F.2d 64 (1st Cir. 1978), and United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985), are unavailing as these cases "cannot be relied up [sic] as valid precedent" because they "predate" North Carolina v. Butler, 441 U.S. 369 (1979), Bui, and United States v. Garcia, 983 F.2d 1160 (1st Cir. 1993).

### A.     The interrogation cannot be characterized as a "back-and-forth conversation."

The Government contends that the defendant implicitly waived his rights by suggesting that his statements were made as part of a "back-and-forth conversation," and therefore, under Bui v. DiPaolo, 170 F.3d 232 (1st Cir. 1999), constituted a waiver. Proposed Findings at 5. This argument mischaracterizes Bui and therefore is fundamentally flawed. It is not enough, under Bui, that an officer testify that, instead of "interrogating" the defendant, he was "shooting the breeze" or that he was engaged in a "conversation." See Tr. at 59, 75. On the contrary, Bui used "back-and-forth conversation" as shorthand for a very specific situation, where the defendant is asking questions to the officers and they are responding to his questions and asking further questions of him. Bui cited Baskin v. Clark, 956 F.2d 142, 146 (7th Cir. 1992), for the proposition. 170 F.3d at 240. In Baskin, the defendant both responded to questions and "asked questions as to the whereabouts of certain individuals." 956 F.3d at 146. Likewise, in Bui, the defendant asked officers, "who said I did this?" 170 F.3d at 241. In such cases, the defendant acts, at least in part, as the initiator in the discussion, and therefore his conduct can be considered as an affirmative waiver. In this case, on the contrary, there was no evidence presented that the defendant, at any point, asked any questions of the officers or otherwise initiated conversation. The evidence shows only that he responded to the questions put

---

Proposed Findings at 6 n.3. The contention that Christian and Porter are no longer good law is simply unsupportable. None of the cases cited overruled any of the relevant portions of Christian or Porter, and Christian and Porter continue to be good law in this Circuit. Christian was cited approvingly by the First Circuit as recently as 1998. See United States v. Andrade, 135 F.3d 104, 108 (1st Cir. 1998). Porter was cited in Garcia itself, for the very proposition for which the defendant cited it. See Garcia, 983 F.2d at 1169.
    The Government notes that the factual situations in Christian and Porter are distinguishable from the present case. Proposed Findings at 6 n.3. However, the defendant is not relying on these cases for their specific factual holdings, but rather for the broader principle that the issue of whether there was an actual waiver is distinct from the issue of whether a defendant understood his rights. See Christian, 571 F.2d at 68; Porter, 764 F.2d at 7.

to him. In fact, Pasciucco stated that, as to the issue regarding the defendant's true name, "[W]e just came in and asked him." Tr. at 75. This case therefore does not fall under the rubric of a "back-and-forth conversation."

      **B.    The defendant's statements were not part of a rational attempt to avoid responsibility.**

In support of its argument that the defendant waived his rights, the Government also argues that it was a "rational choice" to talk to the agents, citing a short discussion in United States v. Andrade, 135 F.3d 104, 108 (1st Cir. 1998). Proposed Findings at 5. The Government, however, fails to explain how the defendant's statements were the product of a rational choice, beyond noting that the officers' purpose in questioning the defendant was to obtain information about a Jamaican drug smuggling ring. Proposed Findings at 5. There is no evidence that the defendant was, as was the defendant in Andrade, trying to protect himself by giving statements "consistent with [a] cover story." Andrade, 135 F.3d at 107-108.[3]

      **C.    The Government has not pointed to any circumstances that would support a finding of an implicit waiver.**

The Government has introduced no evidence, even if the testimony of the officers were credited in its entirety,[4] that could support a finding of an actual waiver. The Government has alleged that the defendant was read his rights, that he understood his rights, and that he subsequently

---

[3] As noted by the defendant in his prior memorandum, Andrade involved a situation where the defendant had previously exercised his right to remain silent, a circumstance not present here. See Andrade, 135 F.3d at 107.

[4] Pursuant to the Court's oral statement requesting memoranda on the legal issues "but not telling me what facts I should find," Tr. at 91, the defendant has not specifically proposed findings of fact.

responded to interrogation. Without more, that is insufficient to constitute an implied waiver.[5] See Miranda v. Arizona, 384 U.S. 436, 475 (1966). In United States v. Rodriguez, 931 F.Supp. 907 (D. Mass. 1996), the defendant was advised of his rights, was taken into custody, and then -- without having said that he waived his right to remain silent -- subsequently asked, "Where are the guns?" The court suppressed his statement in response that the guns were in the bedroom. It wrote:

> [The defendant] made no affirmative statement, gave no hint of his willingness to talk and did not indicate that he waived his rights. The Court sees no evidence of anything, external or internal, that supports a finding of a knowing and intelligent abandonment of [the defendant's] right to remain silent.

Id. at 924, citing Butler, 441 U.S. at 373; Christian, 571 F.2d at 67; Porter, 764 F.2d at 7. Similarly, in this case the Government has not adduced any evidence that would support a finding of a waiver of the defendant's rights.

>                          Respectfully submitted
>                          The defendant Clarence Earle
>                          By his attorney
>
>                          /s/ Charles W. Rankin
>                          _____
>                          Charles W. Rankin
>                          BBO #411780
>                          Rankin & Sultan
>                          1 Commercial Wharf North
>                          Boston, MA  02110
>                          (617) 720-0011

---

[5]The Government's quotation from Moran v. Burbine, 475 U.S. at 422-423, see Proposed Findings at 7, is somewhat misleading, as it addresses the issue of whether a given waiver is valid and not, as is argued here, whether there was, in fact, a waiver.