UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
            v.                  )    Cr. A. No. 04-10065-MLW
                                )
CLARENCE L. EARLE               )

MEMORANDUM AND ORDER

WOLF, D.J.                                    November 2, 2005

I.    SUMMARY

        Defendant Clarence L. Earle is charged with illegally
reentering the United States after being deported in violation of
8 U.S.C. §1326. He has filed a motion to suppress the statements
that he made to agents of United States Immigration and Customs
Enforcement ("ICE") after being arrested on November 6, 2003. The
government opposes this motion. An evidentiary hearing was held on
October 7, 2005.

        As described in detail in this Memorandum, the defendant's
motion to suppress is meritorious because the government has not
proven by a preponderance of the evidence that he understood his
Miranda rights and, therefore, he could not, and did not, waive
them intelligently before making incriminating statements to the
ICE agents. Therefore, those statements, and any evidence derived
from them, will not be admitted as evidence at defendant's trial.


II.   FACTS

        The following facts are proven by a preponderance of the
credible evidence.

On November 6, 2003, ICE agents and officers of the Boston Police Department were investigating a drug smuggling operation. A confidential informant told them that the defendant, who was using the name Theodore Wilson, was involved in that operation. The officers wanted to obtain the defendant's cooperation in their investigation.

The ICE agents learned that the Immigration and Naturalization Service ("INS") was seeking a warrant or detainer for the defendant, who was believed to have illegally reentered the United States and to be using a false name. The investigators also learned that a warrant had been issued for the defendant by the Dorchester District Court. They decided to arrest the defendant and try to persuade him to cooperate in the drug smuggling investigation.

The confidential informant arranged a meeting with the defendant. As the defendant was driving with a female passenger he was surrounded and stopped by several police vehicles on a busy highway, Morrissey Boulevard in Dorchester. The defendant and his passenger were removed from his car, frisked, and taken to the side of the road.

While standing by a guardrail, Boston Police Lieutenant Daniel Linskey quickly read a <u>Miranda</u> warnings card simultaneously to the defendant and his passenger. The card stated:

Before asking you any questions, it is my duty to advise you of your rights:

1.     You have the right to remain silent;

2

2.    If you choose to speak, anything you say may be
      used against you in a court of law or other
      proceeding;

3.    You have the right to consult with a lawyer before
      answering any questions and you may have him
      present with you during questioning;

4.    If you cannot afford a lawyer and you want one, a
      lawyer will be provided for you by the Commonwealth
      without cost to you;

5.    Do you understand what I have told you;

6.    You may also waive the right to counsel and your
      right to remain silent and you may answer any
      question or make any statement you wish. If you
      decide to answer questions you may stop at any time
      to consult with a lawyer.

See Ex. 1.

It is not proven that the defendant heard or understood these

warnings. The defendant did not respond to the question about

whether he understood his rights or otherwise acknowledge that he

understood them. Indeed, Linskey made no effort to ascertain

whether the defendant understood his rights. Rather, immediately

after reading from his card Linskey began "putting on a show" by

yelling orders to other officers to try to give the informant, who

evidently was observing the scene from a bridge, some cover. Oct.

7, 2005 T. at 51.[1]

The defendant was arrested on the Dorchester District Court

---

[1]ICE Agent Peter Pasciucco testified that the defendant was
given Miranda warnings as soon as he was removed from his
automobile by an unidentified police officer. The court does not
find this testimony to be credible.

3

warrant and in connection with the drug smuggling investigation. He was taken to a local police station and booked. He was not orally given <u>Miranda</u> warnings again at the police station.

However, at the police station Linskey gave the defendant a Boston Police Department Booking Form, Exhibit 2. It contained, in bold type, <u>Miranda</u> warnings, and the question, "Do you understand what I have told you." In fainter type was the statement, "Yes, I understand" and a signature line. The form did not contain a place for the prisoner to indicate whether or not he wished to waive his <u>Miranda</u> rights. The form did contain a description of the prisoner's property and a signature line for him to acknowledge the property that was being held.

There is no direct evidence that the defendant read the form. The court finds that he did not. As he testified, Linskey:

> said [to the defendant] that these are the rights I informed you of earlier. You've got to sign here and you have to sign for your property. We have a belt, laces, and it listed the property. And he signed the form and I signed the form.

Oct. 7, 2005 Tr. at 23. Thus, the court finds that Linskey instructed the defendant to sign the form and that he did so without reading it.

Linskey brought the defendant upstairs for questioning by ICE agents Eric LaForte, Peter Pasciucco, and Peter Darling about thirty minutes after the arrest. The government has presented somewhat inconsistent versions of what transpired next. According

4

to LaForte's report, which was appended to defendant's motion to suppress: "Agent's initiated the interview by asking Wilson if he had been advised of his rights and if he understood them. Wilson stated that he did." LaForte Report at 2. The agents then asked if Theodore M. Wilson was an alias. Id. The defendant, according to the report, responded that: he was Eric Allen; he had been born in Jamaica; he had been deported from the United States in 1990 or 1991 after serving a sentence for illegally possessing a firearm; he illegally reentered the United States five years later; he was deported again in 2001 or 2002 after another firearms conviction; and he illegally reentered the United States again. It is these statements that defendant seeks to suppress.

Pasciucco testified at the suppression hearing and gave a more accurate and complete rendition of the relevant events. According to Pasciucco, the ICE agents asked the defendant: "had he been read his rights downstairs? Did he understand them. He said 'yes.'" Oct. 7, 2005 Tr. at 59.

The ICE agents then "did a pitch that [they] would like [the defendant] to help [them] with some cases" and said "maybe [they] could help him with whatever problems he may have." Id.

The ICE agents knew that INS believed the defendant had illegally reentered the United States and that his real name was not Theodore Wilson. The ICE agents told the defendant that "to be helpful to [them] he would have to be honest and tell [them] the

5

truth . . . ." Id. at 76. They then asked the defendant's true name and further questions that elicited the responses that the defendant seeks to suppress.

The defendant did not at any time invoke or refer to his rights to remain silent or to counsel. The ICE agents did not ask if he wanted to waive these or his other Miranda rights.

The defendant was subsequently indicted in the instant case for illegally reentering the United States after being deported. Discovery disclosed the confession to committing this crime that the defendant provided the ICE agents. Understanding that discovery was complete, the defendant filed a motion to suppress and supporting affidavit in which he stated that, "I was not given my Miranda warnings prior to questioning" on November 6, 2003. Aug. 3, 2005 Aff., ¶2. The government subsequently found and disclosed to defendant the Miranda warning card and Boston Police Department Booking Form that were admitted as Exhibits 1 and 2 at the October 7, 2005 suppression hearing over the defendant's objection.

The government did not at the suppression hearing introduce any evidence concerning the defendant's background and experience. It has subsequently argued that the court should consider information on these issues from defendant's detention hearing and arraignment. The defendant objects to the consideration of this information on the ground that he did not know that the government was relying on it and, therefore, did not have an opportunity to

6

challenge or supplement it at the suppression hearing. Moreover, it may be impermissible to rely on information generated in the prior proceedings if it derives from statements the defendant made on November 6, 2003, which must otherwise be suppressed. However, assuming, without finding, that the information at issue may properly be considered, the court concludes that it is not material.

At his May 23, 2005 arraignment the defendant stated that he was then 37 years old, and was a high school graduate who had no difficulty speaking or understanding English. In deciding to detain the defendant pending trial, the Magistrate Judge wrote:

> BICE records indicate that the defendant Clarence Earle was born on October 29, 1967 in Jamaica. He has used numerous alias identities. The defendant has an extensive criminal record beginning in 1992, including convictions for possession of a firearm, assault and battery with a dangerous weapon, operating to endanger, and possession and distribution of a Class D controlled substance. He has been incarcerated on various occasions. There are various drug-related charges presently pending against the defendant in the Dorchester District Court. His record is replete with defaults.

March 17, 2004 Memorandum and Order on Government's Motion for Detention at 5.

As explained in Section IV below, the court finds that the government has not proven that, on November 6, 2003, the defendant understood that he had a right to counsel and to remain silent, or that his statements to the ICE agents could be used against him. Therefore, he could not, and did not, intelligently waive those

rights before making incriminating statements to the ICE agents.

III. THE APPLICABLE LAW

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." To make this right meaningful, the Supreme Court has held that in the inherently coercive circumstances of interrogation of a person who is in custody, law enforcement officials must inform the individual that: (1) he has the right to remain silent; (2) his statements may be used against him at trial; (3) he has a right to an attorney during questioning; and (4) if he cannot afford an attorney, one will be appointed to represent him. Miranda v. Arizona, 384 U.S. 436, 479 (1966); Dickinson v. United States, 530 U.S. 428, 438-40 (2000). An individual may knowingly, intelligently, and voluntarily waive these rights and answer questions without an attorney. Miranda, 384 U.S. at 479. However, unless the government demonstrates that the required warnings have been given and have been knowingly, intelligently, and voluntarily waived, it may not introduce at the trial of the interrogated individual any evidence obtained from its questioning. Id.; Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Christian, 571 F.2d 64, 67-69 (1st Cir. 1978); Hart v. Attorney General of Florida, 323 F.3d 884, 891-92 (11th Cir. 2003).

"The requirement of warnings and waiver of rights is a

fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." <u>Miranda</u>, 384 U.S. at 476. Therefore, it is not sufficient for a law enforcement officer merely to read a person his <u>Miranda</u> rights. <u>Christian</u>, 571 F.2d at 67-68. Rather, the government has an obligation to assure that the person understands those rights and voluntarily and intelligently relinquishes them. <u>Moran</u>, 475 U.S. at 421.

As the Supreme Court has explained, the inquiry concerning whether <u>Miranda</u> rights have been waived "voluntarily, knowingly, and intelligently . . . has two distinct dimensions." <u>Id.</u>

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. <u>Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.</u> Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and <u>the requisite level of comprehension</u> may a court properly conclude that <u>Miranda</u> rights have been waived.

<u>Id.</u> (emphasis added); <u>see</u> <u>also</u> <u>Hart</u>, 323 F.3d at 892.

The government bears the burden of proof concerning a motion to suppress statements that a defendant asserts were obtained in violation of his <u>Miranda</u> rights. <u>Miranda</u>, 384 U.S. at 475; <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986). The knowing, intelligent, and voluntary waiver of those rights must be proven by a preponderance of the evidence. <u>Connelly</u>, 479 U.S. at 168.

The Supreme Court has characterized this as a "heavy burden." _Miranda_, 384 U.S. at 475; _see also_ _North Carolina v. Butler_, 441 U.S. 369, 373 (1979) ("the prosecution's burden is great"). The First Circuit has explained that, "[w]hat is required is a clear showing of the intention, intelligently exercised, to relinquish a known and understood right." _United States v. Garcia_, 983 F.2d 1160, 1169 (1st Cir. 1993) (citing _Patterson v. Illinois_, 487 U.S. 285, 292 (1988) and _United States v. Porter_, 764 F.2d 1, 7 (1st Cir. 1985), _cert_. _denied_, 481 U.S. 1048 (1987)). In _Porter_, the First Circuit wrote:

> Merely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. _Miranda_ requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them.

_United States v. Porter_, 764 F.2d at 7 (citing _Christian_, 571 F.2d at 68).

"'[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." _North Carolina v. Butler_, 441 U.S. 369, 373 (1979) (quoting _Miranda_, 384 U.S. at 475); _see_ _also_ _Christian_, 571 F.2d at 68. However:

> defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may [] support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

Butler, 441 U.S. at 373; see also Bui v. DiPaolo, 170 F.3d 232, 240 (1st Cir. 1999); United States v. Andrade, 135 F.3d 104, 107 (1st Cir. 1998); Garcia, 983 at 1169.

The question of whether Miranda rights have been knowingly and voluntarily waived "must be determined on 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" Butler, 441 U.S. at 374-75 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see also Andrade, 135 F.3d at 107 ("The waiver issue, it appears, must be decided on the facts."). As explained earlier, however, the Supreme Court has held that, "[o]nly if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived." Moran, 475 U.S. at 421 (internal quotation and citation omitted).


IV.  ANALYSIS

The facts and the applicable law compel the conclusion that the government has not proven by a preponderance of the evidence that the defendant understood his Miranda rights. Therefore, he could not, and did not, knowingly and intelligently waive them.

Some of the circumstances established by the evidence tend to prove defendant understood and properly waived his Miranda rights. On November 6, 2003, the defendant was about 35 years old. He spoke

and understood English.  He had been arrested and prosecuted on previous occasions. The defendant was read his <u>Miranda</u> rights by Linskey at the scene of his arrest. He later signed a form that reiterated those rights and included a statement that he understood them.  Shortly  thereafter  the  defendant  said  "yes"  when  the interrogating  officers  asked  if  he  had  been  read  his  rights downstairs and understood them. In many, if not most, cases these facts would provide a proper basis for finding that a defendant understood  his  <u>Miranda</u>  rights,  and  knowingly  and  intelligently waived them. However, in the unique circumstances of this case the foregoing facts do not suffice.

More specifically, it is not proven that the defendant heard his <u>Miranda</u> rights being read on the highway or that he understood what  was  read  there.  As  described  earlier,  Linskey  read simultaneously to the defendant and the woman traveling with him the rights written on his <u>Miranda</u> card. He did this at the side of a  busy  highway  and  in  the  midst  of  a  chaotic  vehicle  stop  and arrest. The card includes the question "Do you understand what I have told you." However, there was no testimony that the defendant responded to this question or otherwise acknowledged at the scene of the arrest that he had heard what had been read and understood his  <u>Miranda</u>  rights.  Indeed,  Linskey  testified  that  immediately after he read the defendant and his passenger their <u>Miranda</u> rights he began "putting on a show" by yelling orders to other officers in

an effort to provide some cover for the confidential informant. Oct. 7, 2005 Tr. at 51. In essence, the evidence indicates only that Linskey recited the required Miranda warnings. It does not prove that the defendant heard them or, if he did, that he understood them.

Although the defendant had been arrested many times previously, there is no direct evidence concerning whether he was read his Miranda rights or understood them on those occasions. As Miranda warnings are routinely given to arrested individuals, the court assumes that the defendant received them previously. There is, however, no evidence that Miranda warnings were carefully given or that the defendant demonstrated an understanding of his Miranda rights on previous occasions. Moreover, as explained earlier, the government has an obligation to provide an arrested individual complete Miranda warnings and to assure that he understands them. Moran, 425 U.S. at 421. While prior experience with being arrested is relevant, it is not sufficient to prove that a defendant received adequate warnings and understood them on some prior occasion. See United States v. Patane, 124 S. Ct. 2620, 2625 n.1 (2004) (government concedes that answers to questioning were inadmissible because Miranda warnings were not completely given after defendant asserted he knew his rights).

Neither Linskey nor anyone else read the defendant his Miranda rights again at the police station. As described earlier, there is

no direct evidence that at the police station the defendant read the form containing his Miranda rights or saw the statement that he understood them, which was in fainter type than the warnings. Rather, the evidence indicates that he did not read the form. Linskey testified that he:

> said that these are the rights I informed you of earlier. You've got to sign here and you have to sign for your property. We have a belt, laces, and it listed the property. And he signed the form and I signed the form.

Oct. 7, 2005 Tr. at 23. Thus, the court finds that Linskey instructed the defendant to sign the form and that he did so without reading it. Accordingly, defendant's signature is not reliable evidence that he understood his Miranda rights.[2]

In any event, the form did not include a statement that the defendant wished to waive his Miranda rights. Compare Christian, 571 F.2d at 67 (the standard FBI form has two parts for signatures, one setting out the Miranda rights and the other setting out the waiver of them); Hart, 323 F.3d at 893 (defendant signed "form to indicate that he understood each right and that he was willing to

---

[2]The conclusion that the defendant did not read the form before signing it is reinforced by the affidavit he filed in support of his motion to suppress. In that affidavit the defendant asserted that he was not given Miranda warnings. See Aug. 3, 2005 Aff., ¶2. It is unlikely that he would have made this assertion if he recalled signing the form, in part because an easily demonstrable lie could enhance his sentence under the Sentencing Guidelines See U.S.S.G. §3C1.1. The fact that he evidently did not remember signing the form suggests that the defendant did not read, let alone understand, the form before he signed it.

answer questions without a lawyer.").

The ICE agents to whom Linskey brought the defendant did not read him his <u>Miranda</u> rights before questioning him. This is not dispositive, however, because a change in questioners does not always require a reiteration of <u>Miranda</u> warnings. <u>United States v. Weekley</u>, 130 F.3d 747, 751 (6th Cir. 1997).

The ICE agents did ask the defendant whether he had been read his <u>Miranda</u> rights downstairs in the police station and understood them, to which the defendant answered "yes." The defendant had not, however, been read his <u>Miranda</u> rights downstairs in the police station. Thus, his affirmative response reflected a lack of comprehension of the questions or a lack of attention in responding to them. Therefore, his response is not persuasive evidence that defendant actually understood his <u>Miranda</u> rights. In any event, as explained earlier, merely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. <u>Porter</u>, 764 F.2d at 7; <u>Christian</u>, 517 F.2d at 68.

In many cases in which a waiver has been found the defendant manifested an understanding of his <u>Miranda</u> rights before engaging in conduct that was deemed to be a knowing, intelligent, and voluntary waiver of them. In contrast, the defendant in this case did not say or do anything that reflected a knowledge of his rights to counsel and to remain silent before making the statements he

seeks to suppress.

For example, in <u>Butler</u>, 441 U.S. at 371, the defendant refused to sign the waiver portion of the FBI's advice of rights form before making incriminating statements. In <u>Bui</u>, 170 F.3d at 240-41, after a second round of <u>Miranda</u> warnings "the petitioner proclaimed that he knew his rights and that the Constitution would protect him" before spontaneously making, without any police provocation, incriminating remarks and then engaging in conversation with the police. In <u>Andrade</u>, 135 F.3d at 106-08, after being advised of his <u>Miranda</u> rights the defendant refused to answer questions, asked the officers to leave, and spoke to the officers hours later only after his sister implored him to do so. In <u>Conley</u>, 156 F.3d 78, 83 (1st Cir. 1998), the defendant requested a lawyer and then expressed an "insatiable desire" to speak with the police officer despite being reminded of his right to an attorney. In <u>United States v. Hsu</u>, 852 F.2d 407, 409, 411-12 (9th Cir. 1988), the defendant invoked his right to remain silent, was later given a second set of <u>Miranda</u> warnings, and then answered questions.

In the foregoing circumstances, the defendant or petitioner did not simply say he understood his <u>Miranda</u> rights. Rather, he clearly demonstrated an understanding of them by refusing to answer questions before evidently changing his mind. In the instant case, however, the defendant did not engage in comparable conduct and there is no basis to infer from his actions that he truly

understood his right to counsel or his right to remain silent.

Indeed, the conflicting evidence indicates that the interrogating officers either ignored their duty to determine whether the defendant wished to waive his <u>Miranda</u> rights or lulled him into believing that it was not important whether he understood them because the officers would help him if he helped them. More specifically, LaForte's report, at 2, states that immediately after asking if the defendant had been read and understood his <u>Miranda</u> rights, the agents asked him if Theodore Wilson was an alias and, if so, what his true name and birth date were. According to LaForte, this inquiry prompted the incriminating answers the government seeks to use at trial in this case. <u>Id.</u>

As described earlier, Pasciucco's testimony, which the court finds more credible on this point than LaForte's report, indicates that the report is materially incomplete and misleading. The agents knew that the defendant had evidently reentered the United States illegally and believed that he was not actually Theodore Wilson. After the defendant answered "yes" to whether he had been read his rights downstairs and understood them, the ICE agents "did a pitch that [they] would like him to help [them] with some cases kind of thing and maybe [they] could help him with whatever problems he may have." Oct. 7, 2005 Tr. at 59. They told him that "if he was going to be helpful [to the agents] he would have to tell [them] the truth." <u>Id.</u> at 76. These statements would have reasonably

17

encouraged the defendant to believe that it was not important that he actually understand his rights or intelligently decide whether to waive them, because if he answered the agents' questions his cooperation would help rather than hurt him.

The instant case is, therefore, similar to <u>Hart</u>.  In that case the officers "carefully explained each <u>Miranda</u> warning to Hart, including that anything he said could be used against him in court." <u>Hart</u>, 323 F.3d at 893. Hart then signed a form stating that he understood and waived his <u>Miranda</u> rights. <u>Id.</u> Nevertheless, Hart asked whether he should answer questions without a lawyer, and made inquiries that indicated that he did not fully understand his right to counsel. <u>Id.</u> at 894. The officers told Hart that "'honesty wouldn't hurt him.'" <u>Id.</u> The Eleventh Circuit granted Hart's motion to suppress his subsequent statements, writing:

> Telling him that "honesty wouldn't hurt him" contradicted the <u>Miranda</u> warning that anything he said could be used against him in court. The phrase "honesty will not hurt you" is simply not compatible with the phrase "anything you say can be used against you in court." The former suggested to Hart that an incriminating statement would not have detrimental consequences while the latter suggested (correctly) that an incriminating statement would be presented at his trial as evidence of his guilt.
>
> * * *
>
> His decision to waive his rights and confess was a product of [the officer's] deception and, as a result of her contradictory statements, he did not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it. Therefore, his waiver was not voluntary, knowing, and intelligent as required by <u>Miranda</u>.

18

<u>Id.</u> at 894-95.

Similarly, in this case the defendant, whose conduct manifested no actual understanding of his <u>Miranda</u> rights, would have been led to believe by Pasciucco's comments that his answers to the ICE agents' questions would help him and not hurt him. As in <u>Hart</u>, this contributes to the court's finding that the government has not proven that the defendant understood his <u>Miranda</u> rights and waived them intelligently.[3]

This case does not fit any of the paradigms in which an implied waiver of <u>Miranda</u> rights are most often found.  As the First Circuit has written:

> [T]here are certain types of cases in which courts routinely conclude that a defendant who has professed an understanding of his right to remain silent has waived that right. For example, a defendant will be held to have effected a waiver when, after receiving warnings and asserting (equivocally or unequivocally) a right to remain silent, he spontaneously recommences the dialogue with his interviewers. <u>See</u> <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981); <u>United States v. Conley</u>, 156 F.3d 78, 83 (1st Cir. 1998). So, too, if a defendant's incriminating statements were made either as part of a "steady stream" of speech, <u>Bradley v. Meachum</u>, 918 F.2d 338, 342 (2d Cir. 1990), or as part of a back-and-forth conversation with the police, <u>Baskin v. Clark</u>, 956 F.2d 142, 146 (7th Cir. 1992), courts regularly have found waivers. A waiver of <u>Miranda</u> rights also may be implied

---

[3]The court understands that if it is proven that a person in custody understands his <u>Miranda</u> rights, seeking his cooperation and giving him a rational reason to decide to waive them would not render that person's statements involuntary and, therefore, inadmissible. <u>Cf.</u> <u>Andrade</u>, 135 F.3d at 107-08. However, the fatal flaw in this case is that the government has not proven that the defendant understood and intelligently waived his <u>Miranda</u> rights, not that the waiver was coerced or otherwise involuntary.

>when, after having received <u>Miranda</u> warnings, a criminal
>defendant responds selectively to questions posed to him.
><u>See</u> <u>United States v. Soliz</u>, 129 F.3d 499, 503 (9th Cir.
>1997); <u>United States v. Eaton</u>, 890 F.2d 511, 513-14 (1st
>Cir. 1989) (Breyer, J.); <u>United States v. Chong</u>, 829 F.2d
>1572, 1574 (11th Cir. 1987).

<u>Bui</u>, 170 F.3d at 240.

As explained earlier, in this case the defendant did not assert his <u>Miranda</u> rights and spontaneously recommence the dialogue with his interrogators. Nor were his incriminating statements part of an uninterrupted stream of speech in which a statement of intent to remain silent is followed by an incriminating statement. <u>Cf.</u> <u>Bradley</u>, 918 F.2d at 342. In addition, the defendant did not respond selectively to questions.

The government argues that this case should be deemed analogous to <u>Baskin</u>, 956 F.2d at 146, in which incriminating statements were not suppressed in part because they were made during a "back and forth conversation." However, this case is distinguishable from <u>Baskin</u> in material respects. Immediately after he was read his <u>Miranda</u> rights Baskin was asked if he understood them and he responded that he did. <u>Id.</u> In contrast, there is no evidence here that the defendant acknowledged understanding his rights when they were read to him on the highway and the court finds that he did not read them on the form he signed. In <u>Baskin</u> there was evidence that the statement at issue was made spontaneously rather than as a result of questioning by the police. <u>Id.</u> This is not true in the instant case. Finally, in contrast to

20

Baskin, the agents "pitch" would have reasonably led the defendant
here to believe that his statements would help rather than hurt
him.

As described earlier, "the court[] must presume that a
defendant did not waive his rights; the prosecution's burden is
great; but in at least some cases waiver can be clearly inferred
from the actions and words of the person interrogated." Butler, 441
U.S. at 373. Among other things, the government must prove that any
waiver was "made with a full awareness of both the nature of the
right being abandoned and the consequences of the decision to
abandon it." Moran, 475 U.S. at 421. "What is required is clear
showing of the intention, intelligently exercised, to relinquish a
known and understood right." Garcia, 983 F.2d at 1169. The
government has not proven by a preponderance of the evidence that
the defendant understood his Miranda rights and, therefore, the
court finds that he did not waive them intelligently. Accordingly,
his motion to suppress is being allowed.


V.    ORDER

    For the foregoing reasons, it is hereby ORDERED that:

    1.    Defendant's Motion to Suppress is ALLOWED.

    2.    Defendant's statements to the ICE agents on November 6,
2003, and any information derived from them, shall not be admitted
at defendant's trial.

_/s/ MARK L. WOLF_____
UNITED STATES DISTRICT JUDGE