UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____

No. 04-CR-10065-MLW
_____

UNITED STATES

v.

CLARENCE EARLE
_____

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant Clarence Earle submits this sentencing memorandum to aid the Court in fashioning an appropriate sentence.

**1.    The Court Should Not Impose a Two-Level Upward Adjustment for Obstruction of Justice Under USSG 3C1.1.**

The Probation Officer has identified two statements that may trigger a two level upward adjustment for obstruction of justice – the defendant's statement to the Court on May 23, 2005 at his arraignment on the Superseding Indictment that his name is Theodore Wilson, and his statement in the affidavit in support of his motion to suppress that his name is Theodore Wilson. The government contends that those statements trigger the enhancement. The defendant disagrees.

The applicable guideline reads:

§3C1.1. Obstructing or Impeding the Administration of Justice
If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and

>any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

Application Note 4(f) provides an example of "the types of conduct to which this adjustment applies: (f) providing materially false information to a judge or magistrate."

Application Note 6 explains that, "'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."

Here, there are several reasons why the Court should not impose the upward adjustment. Neither statement was material. At the arraignment, there was no issue under determination that would be influenced by whatever name the defendant used. That distinguishes this case from the cases relied upon by the government where the defendant used a false name with pretrial services or the Magistrate Judge in order to conceal a prior criminal record that would be relevant to the decision whether to detain the defendant under 18 U.S.C. § 3142. United States v. Price, 988 F.2d 712, 721 (7th Cir. 1993); United States v. Garcia, 69 F.3d 810, 816 (7th Cir. 1995); United States v. Angulo-Lopez, 1993 WL 394835 (9th Cir. 1993)(unpublished).[1]

In United States v. Tran, 285 F.3d 934, 939-40 and 940 n.3 (10th Cir. 2002), the Court recognized that there might be a problem with imposing the enhancement upon a defendant who used a false name at arraignment because detention was not an issue at that hearing. In Tran, the

---

[1] The government cites Angulo-Lopez for the proposition that signing a false financial affidavit under oath warranted an enhancement. That statement in the opinion is dicta, and is asserted without any analysis of whether it was material. The holding in the case was that use of a false name to make it difficult for pretrial services to identify a criminal record does warrant the enhancement. 1993 WL 394835, *10.

Court went on to impose the adjustment because the defendant gave a false name at hearings before the Magistrate Judge where the issue was release or detention.

Here no one was deceived when Mr. Earle stated that his name was Theodore Wilson at his arraignment. In fact, at an earlier hearing on whether Mr. Markham should be allowed to withdraw, the Court demonstrated its sensitivity to the issue of the defendant's name: "I'm not even going to ask your name, because I think that's one of the issues in dispute here." Tr. 4-8-2005, p. 5. And it certainly cannot be contended that Mr. Earle was attempting to mislead anyone, since he clearly understood the evidence the government had amassed. Moreover, he had used the name Theodore Wilson for many years, as evidenced by the background information in the presentence report.

Similarly, the defendant's action in signing the name Theodore Wilson to his affidavit in support of the motion to suppress should not trigger the enhancement since the defendant's true name was not material to that proceeding.

**2.     The Maximum Sentence is Two Years Under 8 U.S.C. § 1326(a), Because The Government Did Not Plead or Prove Beyond a Reasonable Doubt that the Defendant Was Deported After A Conviction for an Aggravated Felony.**

Section 1326(a) provides for a maximum punishment of two years. Section 1326(b)(2) provides for a maximum punishment of twenty years if the alien was removed after conviction for an aggravated felony. The government did not allege in the indictment that the defendant had such a conviction, or the sequence of removal and conviction, nor did it offer proof of such facts at the trial. Under the Sixth Amendment, the government must plead and prove all essential elements of the offense. It is the defendant's position that the existence and sequence of an aggravated felony

is an essential element of the offense, and thus the maximum punishment that may be imposed on Mr. Earle is two years.

The Supreme Court's decision in Almendarez-Torres, 523 U.S. 224 (1998), is to the contrary. Of course, since Almendarez-Torres was decided, Justice Thomas, who was the fifth vote in the majority, has repeatedly stated that Almendarez-Torres was wrongly decided.  See e.g. Apprendi v. New Jersey, 530 U.S. 66, 520-21 (2000)(concurring, and describing Almendarez-Torres as wrongly decided); Shepard v. United States, 544 U.S. 13, ___, 125 S. Ct. 1254, 1264 (2005)(concurring, stating that subsequent caselaw has undermined Almendarez-Torres).[2]

The First Circuit has also rejected plain error arguments, based on Apprendi and Blakely, directed at 1326 convictions.  United States v. Guerrier, 428 F.3d 76, 81 (1st Cir. 2005); United States v. Cordoza-Estrada, 385 F.3d 56 (1st Cir. 2004).

There is an important distinction between this case and Almendarez-Torres that gives the Court a legitimate basis to analyze this question without feeling bound by the Supreme Court's decision, and without undermining the important principle that lower courts should follow Supreme Court precedent until the Supreme Court overrules its earlier decision.  Cf. Eberhart v. United States, 126 S. Ct. 403, 407 (2005)(praising Seventh Circuit for deciding issue in accordance with Supreme Court precedent, while at the same time calling attention to its doubts about the result).

The argument is that the amendments that were added in sections 1326(b)(3) and 1326(b)(4) make it clear that Congress intended all of the subparts of 1326(b) to constitute separate offenses. Those subparts were added to the statute after the underlying crime was committed in Almendarez-

---

[2]   Two other members of the majority in Almendarez-Torres – the late Chief Justice Rehnquist and Justice O'Connor –  are no longer on the Court.

Torres, and thus did not directly control its result. The sections were added before the Supreme Court's decision, and their effect was addressed by both the majority, 523 U.S. at 236-37, and the dissent, 523 U.S. at 269 and n.7. The majority did not find Congress's 1996 enactment of amendments compelling in interpreting the meaning of the provisions that were in effect in 1995. Here, we are dealing with a statute that does include those amendments. Those amendments strongly suggest that Congress understood that the subparts of section 1326 are separate crimes, and not merely sentencing enhancements. In light of that, this Court should consider itself free to rule that section 1326(b)(2) of the 1996 statute is a separate crime from section 1326(a), and that the government has failed to plead and prove an essential element of section 1326(b).

The defendant understands that the Court may nevertheless feel itself bound by the Court's decision in Almendarez-Torres, and presents this argument – that the Sixth Amendment, as elucidated by Apprendi and subsequent cases, requires the government to plead all essential elements, including prior convictions, in the indictment, and prove them to a jury beyond a reasonable doubt – to preserve the issue for appellate review.

3. **Once the Court Decides the Appropriate Sentence for Defendant, It Should Reduce that Sentence by One Month to Account for the Time Defendant Was Civilly Detained by the Immigration Authorities.**

In response to objection one, the Probation Officer agrees that the Bureau of Prisons does not ordinarily award credit for time spent in administrative detention. In this case, Mr. Earle was held by immigration authorities in administrative detention between February 12, 2004 and March 12, 2004. The Probation Officer also agrees that the guidelines do not address the circumstances of this case.

Other courts have approved downward departures, in a pre-Booker context, to adjust the federal sentence to take into account the time spent in administrative detention. In United States v. Camejo, 333 F.3d 699 (6th Cir. 2003), the court ruled that a downward departure was not forbidden by the guidelines where the defendant was detained in INS custody for two years before his trial, and remanded for re-sentencing. In United States v. Montez-Gaviria, 163 F.3d 697 (2nd Cir. 2998), the court held that a district court could depart under USSG 5K2.0 for time the defendant spent in INS custody that was not otherwise credited. United States v. Ogbondah, 16 F.3d 498 (2nd Cir. 1994), is to the same effect.

In a post-Booker context, the Court should consider as a mitigating factor the reality that the defendant will not receive credit towards his sentence for the month he spent in civil detention.

**4.    The Court Should Consider the More Severe Restrictions the Defendant Will Face in Prison than those Faced by Non-Aliens as a Mitigating Circumstance Warranting a Sentence Below the Applicable Guideline Sentencing Range.**

As an alien who will deported at the end of his sentence, the defendant will be treated more harshly by the Bureau of Prisons than non-alien defendants. He will not be eligible to serve the last six months of his incarceration in a halfway house, as provided by 18 U.S.C. §3624(c). He will not be eligible for a designation to a minimum security institution. Bureau of Prison Policy Statement 5100.07, ch. 7, p. 3. Deportable aliens are also not eligible for a sentence reduction for successful completion of the Residential Drug Abuse Program. Bureau of Prison Policy Statement 5330.10, ch. 6, p. 1.

While the First Circuit has held that these prohibitions do not warrant a downward departure under USSG 5K2.0, United States v. Vasquez, 279 F.3d 77 (1st Cir. 2002), they may still be considered as mitigating circumstances that warrant a below-guidelines sentence.[3]

**5.    The Defendant Was Unsuccessful in Challenging his Conviction for Assault and Battery in the Dorchester District Court.**

The defendant challenged the assault and battery with a dangerous weapon conviction in the Dorchester District Court on the basis that the count of the complaint did not charge an offense. On February 15, 2006, the Court (Hanlon, J.) denied the motion.

**6.    Sentencing Recommendation**

The Court should find that the maximum sentence is two years, and impose that sentence on the defendant. If the Court rejects the defendant's Almendarez-Torres argument, it should find that the advisory guideline range is 63 to 78 months, rejecting the obstruction enhancement. The Court should then impose a lower sentence, based on the mitigating circumstances of this case. The defendant suggests the following framework:

Reduce the sentence by six months because of the harsher conditions of confinement the defendant will face in the Bureau of Prisons because he is a deportable alien.

Reduce the sentence by one month because the defendant will not receive credit for the month he spent in administrative detention.

---

[3]    The Sixth Circuit has remanded a case under Booker where the district judge stated at sentencing that he was imposing the low end of the guidelines because of the harsher conditions of confinement faced by deportable aliens, suggesting that such a fact may be a mitigating circumstances. United States v. Navarro-Diaz, 420 F.3d 581, 588-89 (6th Cir. 2005).

Reduce the sentence by three months because the defendant will be held in administrative detention by immigration authorities after the end of his prison sentence, and before his deportation. In counsel's experience, this period of time is usually about three months.

Those reductions yield a sentence of 53 months. The defendant recommends that the Court impose that sentence, with no fine, on the defendant. That sentence would be sufficient, but not greater than necessary, to accomplish statutory purposes of sentencing.

Respectfully submitted
The defendant Clarence Earle
By his attorney

/s/ Charles W. Rankin

_____
Charles W. Rankin, BBO 411780
Rankin & Sultan
151 Merrimac St., 2nd floor
Boston, MA 02114-4717
(617) 720-0011

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 15, 2006.

/s/ Charles W. Rankin

_____
Charles W. Rankin