UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLARENCE L. EARLE,            )
     Petitioner,             )
                             )
     v.                       )     C.A. No. 08-11637-MLW
                             )
UNITED STATES OF AMERICA      )

UNITED STATES OF AMERICA      )
                             )
     v.                       )     Cr. No. 04-10065-MLW
                             )
CLARENCE L. EARLE             )

MEMORANDUM AND ORDER

WOLF, D.J.                                    August 24, 2009

I. INTRODUCTION

     On February 21, 2006, after a five-day jury trial, Clarence
Earle was sentenced to 78 months in custody and 36 months of
supervised release after being found guilty of illegal re-entry of
a removed alien. On September 19, 2008, Earle filed a pro se Motion
Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct his sentence
(the "Petition"). Earle offers four grounds for his Petition: 1)
that a prior conviction that served as the basis of a 16-level
enhancement under U.S.S.G. §2L1.2 has since been vacated; 2) that
his Fifth Amendment right to due process was violated during an
immigration proceeding; 3) several claims of ineffective assistance
of counsel; and 4) that his Sixth Amendment right to a jury trial
was violated because one of the jury members did not speak English.
See Petition. On October 14, 2008, Earle Filed a Motion for Leave

to Amend Petition, seeking to add two additional claims of ineffective assistance of counsel. The government submitted an opposition to the Amended Petition.

Earle has made numerous _pro_ _se_ filings. Now before the court are: 1) Earle's Petition, 2) his Motion to Amend the Petition, 3) a Motion for a Writ of Mandamus relating to a prior immigration proceeding, 4) a Motion to Vacate and Correct Sentence, which is best interpreted as a Reply in support of the Petition, 5) Earle's Motion for Replacement of Counsel, 6) attorney Shea's Motion to Withdraw as Attorney, 7) a Motion for Restrain [sic] Pursuant to 28 CFR §543.11 Legal Research and Preparation of Legal Documents, 8) a second Motion for a Writ of Mandamus asking the court to order a Massachusetts state court to release funds that were forfeit after a previous criminal conviction, and 9) a Motion for Leave to Proceed _In_ _Forma_ _Pauperis_.

For the reasons described below, none of the grounds presented by Earle justify relief under §2255. Therefore, the Petition is being denied. The other motions are being resolved as described.

II. DISCUSSION

As Earle is proceeding _pro_ _se_, his pleadings must be liberally construed. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Instituto de Education Universal Corp. v. U.S. Dept. of Ed., 209 F.3d 18, 23 (1st Cir. 2000); _see_ _also_ Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008)("[W]e hold _pro_ _se_ pleadings to less demanding standards

than those drafted by lawyers."). However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006)(citation omitted).

A.   Motion to Replace Counsel and Motion to Withdraw as Attorney

On October 22, 2008, attorney Mark W. Shea was appointed to represent Earle in this matter. After the appointment of counsel, Earle continued to make filings pro se. Subsequently, Earle made a Motion for Replacement of Counsel, citing a conflict between Shea and himself, and Shea made a Motion to Withdraw as Attorney, citing irreconcilable differences with Earle. Earle has a history of being unable to work with court appointed counsel. During his criminal case the court was forced to appoint three successive attorneys after Earle repeatedly complained of conflicts with his court appointed counsel. See April 7, 2005 Order. Even though the court believes that Earle would benefit from the assistance of counsel in pursuing his §2255 Petition, given his demonstrated inability to work with court appointed counsel, the court will not continue to appoint counsel for him and delay this matter further. See United States v. Tejada, 255 F.3d 1, 4 n.6 (1st Cir. 2001)("[T]here is no right to counsel in civil habeas proceedings"). Therefore, Earle's Motion to Replace Counsel is being denied and Shea's Motion to Withdraw as Counsel is being allowed.

3

B. <u>Motion for Leave to Amend Petition</u>

Earle's Motion for Leave to Amend Petition was filed on October 14, 2008, prior to the respondent filing a responsive pleading. The proposed amendment seeks to add two additional claims of ineffective assistance of counsel to support that ground of the Petition. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), a party may amend its pleading once as a matter of course before being served with a responsive pleading. <u>See</u> <u>United States v. Hicks</u>, 283 F.3d 380, 385 (D.C. Cir. 2002)(holding that §2255 petitions may be amended pursuant to Rule 15(a) and noting other Circuits reaching the same conclusion). Therefore, Earle's Motion to Amend his Petition is being allowed.

C. <u>Motions for a Writ of Mandamus</u>

Earle has made two motions asking this court for writs of mandamus. In order to obtain a writ of mandamus Earle must show that: "(1) his claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other remedy offering adequate relief is available." <u>Khitab v. Novak</u>, 524 F.Supp.2d 105, 106-107 (D. Mass. 2007)(citing <u>In re City of Fall River, Mass.</u>, 470 F.3d 20, 32 (1st Cir. 2006)). "Mandamus is an extraordinary writ that is reserved for special situations in which an agency or official has failed to act (or has acted) in disregard of a clear legal duty and where there is no adequate conventional means for review . . . ."

4

Khitab, 524 F.Supp.2d at 107.

Earle's first motion, Motion for Writ of Mandamus Pursuant to 28 U.S.C. §1361 and Complaint for Declaratory Injunctive Relief ("Mot. for Immig. Mandamus"), asks that the court review a 1990 immigration proceeding concerning Earle. Earle asserts that the Immigration Judge failed to look into his pending application for amnesty and asylum, and improperly denied him the opportunity for voluntary departure. Mot. For Immig. Mandamus at 4. Earle also asserts that his Miranda rights and rights under the Vienna Convention were violated by immigration authorities. Id. at 2-3, 5.

Insofar as Earle asks the court to review the 1990 immigration proceeding, the issue is moot. After the proceeding of which he complains, Earle was deported on January 3, 1991, and then deported for a second time on July 10, 2002. He was arrested for the offense on which he was convicted in this matter on November 6, 2003. It is unclear what relief Earle seeks with this motion. By its title the motion asks for "declaratory injunctive relief," but Earle has already been deported as a result of the proceeding of which he complains. No declaratory or injunctive relief can remedy this.

Furthermore, if Earle is asking the court to review the final determination of deportation, this court lacks the authority to do so. The REAL ID Act of 2005, P.L. 109-13, 119 Stat. 231 (codified at 8 U.S.C. §1252), "specifically eliminated the district courts' habeas corpus jurisdiction over review of removal orders." Saavedra

<u>De Barreto v. Immigration and Naturalization Service</u>, 427 F.Supp.2d 51, 54 (D. Conn. 2006); <u>see</u> <u>also</u> <u>De Araujo v. Gonzales</u>, 457 F.3d 146, 151 (1st Cir. 2006)(holding that the REAL ID Act "stripped the district court of habeas jurisdiction" over review of an order of the Board of Immigration Appeals). Therefore, this motion is being denied.

Earle's second motion for writ of mandamus asks that the court order a Massachusetts state court to release funds forfeited after a previous criminal conviction. However, "federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." <u>Haggard v. State of Tennessee</u>, 421 F.2d 1384, 1386 (6th Cir. 1970); <u>see</u> <u>also</u> <u>Lewis v. Texas</u>, 273 F.3d 1100, at *1 (5th Cir. 2001)(unpublished decision)(same); <u>Zernik v. United States Dept. Of Justice</u>, No. 09-805, 2009 WL 1883068, at *2 (D.D.C. 2009)(same). Therefore, this motion is also being denied.

D. <u>Motion Regarding Legal Research</u>

Earle has filed a Motion for Restrain [sic] Pursuant to 28 CFR §543.11 Legal Research and Preparation of Legal Documents ("Mot. Legal Research"). Earle complains of a change in the policy governing inmate access to the law library in the facility where he is being held. He has submitted as exhibits a memorandum from the Warden of the facility describing the new schedule and a response to his request for more time in the library. The response states in

its entirety, "[y]our request is unclear. If you are asking for extra time in the library, you can send a request to the Librarian." Inmate Request Response, Ex. 2 to Mot. Legal Research. Earle asks the court "to intervene and to restrain the Warden of this institution from carrying out such action." <u>Id.</u> at 2.

The Supreme Court has held that there is no "abstract, freestanding right to a law library or legal assistance." <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996). Therefore, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." <u>Id.</u> Rather he must show an actual injury. "When any inmate . . . shows that an actionable claim of this nature [challenging a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish adequate law libraries or adequate assistance from persons trained in the law." <u>Id.</u> at 356 (citation omitted); <u>see</u> <u>also</u> <u>Boivin v. Black</u>, 225 F.3d 36, 42, 43 n.5 (1st Cir. 2000)(stating that "correctional authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," but noting that "a prisoner must show actual injury in order to

7

demonstrate a violation of the right of access to the courts").

In this case, Earle has alleged no actual injury. In his very brief motion he simply states that the new law library schedule "will deprive the inmates of their rights to access the law library." Mot. Legal Research at 2. This falls short of the actual injury requirement described in <u>Lewis</u>. Therefore, Earle's motion is being denied.

E. <u>Motion for Leave to Proceed In Forma Pauperis</u>

As there is no filing fee for a §2255 action, Earle's Motion for Leave to Proceed <u>In</u> <u>Forma</u> <u>Pauperis</u> is being denied.

F. <u>The §2255 Petition</u>

1. <u>Summary Disposition is Appropriate</u>

As an initial matter, the court finds that this petition may and should be dismissed without an evidentiary hearing. The First Circuit described the test for the granting of an evidentiary hearing in a §2255 proceeding in <u>United States v. McGill</u>, 11 F.3d 223 (1st Cir. 1993). It wrote:

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. <u>See</u> <u>Mack v. United States</u>, 635 F.2d 20, 26-27 (1st Cir.1980); <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. 1978), <u>cert. denied</u>, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.

We have distilled these principles into a rule that holds
a hearing to be unnecessary "when a §2255 motion (1) is
inadequate on its face, or (2) although facially adequate
is conclusively refuted as to the alleged facts by the
files and records of the case." <u>Moran v. Hogan</u>, 494 F.2d
1220, 1222 (1st Cir. 1974). In other words, a "§2255
motion may be denied without a hearing as to those
allegations which, if accepted as true, entitle the
movant to no relief, or which need not be accepted as
true because they state conclusions instead of facts,
contradict the record, or are 'inherently incredible.'"
<u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir.
1984) (citations omitted).

<u>Id.</u> at 225-26 (some citations omitted).  <u>See also</u> <u>United States v.</u>

<u>Panitz</u>, 907 F.2d 1267 (1st Cir. 1990).

    "Moreover, when, as in this case, a petition for federal

habeas relief is presented to the judge who presided at the

petitioner's trial, the judge is at liberty to employ the knowledge

gleaned during previous proceedings and make findings based thereon

without convening an additional hearing."  <u>McGill</u>, 11 F.3d at 225.

    As set forth below, an evidentiary hearing is not necessary or

appropriate in this case because the facts that are disputed are

either not material or are contradicted by the record, with which

this court is familiar as a result of having presided at Earle's

trial.

    2.  <u>16-Level Enhancement Pursuant to U.S.S.G. §2L1.2</u>

    Earle argues that he is entitled to resentencing because the

conviction that served as the basis for a 16-level enhancement at

his sentencing has since been vacated. Petition at 5. On February

3, 1998, Earle received a 12-month sentence for Assault and Battery

with a Dangerous Weapon in Dorchester District Court, Case No. 9707-CR-9353. The conviction was the result of a drug sale and subsequent police chase that ended with Earle's car hitting a police cruiser. <u>See</u> <u>Commonwealth v. Wilson</u>, 892 N.E.2d 751, 752 (Mass.App.Ct. 2008).[1] This conviction qualifies as a crime of violence under U.S.S.G. §2L1.2(b)(1)(A)(ii) and resulted in the application of a 16-level enhancement at the time of Earle's sentencing for the offense for which he is presently incarcerated.

Subsequently, this conviction was vacated. <u>See</u> <u>Wilson</u>, 892 N.E.2d 751. The Massachusetts Court of Appeals explained that the criminal complaint charged that Earle "did, by means of a dangerous weapon, MOTOR VEHICLE, assault and beat COMM OF MASS, in violation of G.L. c. 265, §15A." <u>Id.</u> at *1. However, as the Court of Appeals noted, "[t]here is no crime of assault and battery upon the Commonwealth of Massachusetts." <u>Id.</u> "A human victim is a material element of the offense." <u>Id.</u> In vacating Earle's conviction the court stated that "[a] conviction on an indictment that charges no crime would be sheer denial of due process." <u>Id.</u> (quoting <u>Commonwealth v. Palladino</u>, 260 N.E.2d 653, 655 (Mass. 1970)).

The First Circuit dealt with a similar case in <u>United States v. Luna-Diaz</u>, 222 F.3d 1 (1st Cir. 2000). In <u>Luna-Diaz</u>, as in this case, the defendant was convicted of re-entry after deportation. At

---

[1] Earle was using the name Wilson at the time of this prior conviction.

sentencing, the government argued that he should be subject to a
16-level enhancement under U.S.S.G. §2L1.2 because he was deported
following conviction of an aggravated felony. The district court
refused to apply the enhancement because the conviction had been
later vacated. The First Circuit reversed the district court and
held that the relevant time for determining whether the defendant
had a qualifying conviction is the time of deportation, not the
time of sentencing. Id. at 4. It explained:

> The guideline at issue in this case states[] "[i]f the
> defendant previously was deported after a . . .
> conviction . . . for an aggravated felony increase 16
> levels." The guideline's plain language militates in
> favor of the government's position. The language suggests
> that the relevant time is the time of deportation:
> "deported after a . . . conviction," and not the time of
> sentencing. The guideline speaks of time, not possession
> or status. In other words, the guideline (and statute)
> might have dealt with aliens who have a previous
> aggravated felony conviction or are convicted felons, and
> then are convicted of reentry. The guideline, however, is
> in the past tense, which suggests that the present status
> of the aggravated felony conviction is irrelevant. It is
> impossible to alter the historical fact that the
> defendant was convicted, and then deported.
>
> The same is true of the statute itself, which speaks of
> an alien "whose removal was subsequent to a conviction
> for commission of an aggravated felony." 8 U.S.C.
> §1326(b). By all indications, the relevant time under the
> statute is the moment of removal, not of sentencing.

Id. (emphasis in original). See also United States v. Orduno-
Mireles, 405 F.3d 960, 962 n.1 (11th Cir. 2005)(same); United
States v. Garcia-Lopez, 375 F.3d 586, 588-89 (7th Cir. 2004)(same);
United States v. Johnstone, 251 F.3d 281, 285 (1st Cir.

2001)(same); cf. United States v. Cisneros-Cabrera, 110 F.3d 746, 747 (10th Cir. 1997)(holding that under §2L1.2 the relevant time is the time of re-entry, not sentencing).

In this case, the guideline language is the same. It states, "[i]f the defendant previously was deported . . . after a conviction for a felony that is . . . a crime of violence . . . increase by 16 levels." U.S.S.G. §2L1.2(b)(1)(A)(ii). Earle was previously deported after conviction for a crime of violence. Therefore, Luna-Diaz indicates that the 16-level enhancement should apply, regardless of the fact that the conviction was later vacated.

However, the First Circuit included a possible qualification to its decision in Luna-Diaz. In that case, the prior conviction had been vacated because the judge who accepted the defendant's plea failed to notify him of potential adverse immigration consequences of the plea, in accordance with M.G.L. ch. 278, §29D. See Luna-Diaz, 222 F.3d at 3. The First Circuit noted that, "[t]he instant case does not require us to decide whether allowing §2L1.2(b)'s enhancement to rest on a prior conviction vacated as a result of a constitutional infirmity, egregious error of law, or determination of innocence, might in some limited circumstances raise constitutional due process concerns." Id. at 6 n.5.

In this case, the prior conviction was vacated because of a constitutional infirmity. In vacating Earle's conviction, the

Massachusetts Appeals Court stated that, "[a] conviction on an indictment that charges no crime would be sheer denial of due process." See Wilson, 892 N.E.2d at 753. Thus, this is the type of case that First Circuit stated that it was not deciding in Luna-Diaz. See 222 F.3d at 6 n.5.

However, in Cisneros-Cabrera, the Tenth Circuit held that a conviction that was still valid when a previously deported defendant re-entered the United States provided a proper basis of a U.S.S.G. §2L1.2(b) enhancement despite the fact that the conviction had by the time of sentencing been vacated because a constitutional infirmity - ineffective assistance of counsel. See 110 F.3d at 747-49. In contrast, Judge Nancy Gertner found that United States v. Mejia, 278 F.Supp.2d 55, 62 (D. Mass. 2003), fell into the category of cases contemplated by the footnote in Luna-Diaz and held that the prior conviction in Mejia did not trigger an enhancement under U.S.S.G. §2L1.2 because it had been vacated on the basis of actual innocence. Id.

In the instant case, while Earle's prior conviction was based on a constitutionally deficient charging document, there is no indication that he was actually innocent of the crime of assault and battery. Earle pled guilty to that crime. The judge who accepted the plea found a factual basis for a familiar offense. See Tender of Plea, Ex. A to Government's Opposition. The Massachusetts Appeals Court which vacated Earle's conviction did not address the

13

issue of innocence, but only held that the charging document was constitutionally deficient. See <u>Wilson</u>, 892 N.E.2d 751. Therefore, the assault and battery conviction may have been vacated merely because of a clerical error.

In any event, the First Circuit in <u>Luna-Diaz</u> only left open the possibility that a sentence vacated after deportation for a constitutional infirmity "might in some limited circumstances raise constitutional due process concerns." 222 F.3d at 6 n.5. As described earlier, the Tenth Circuit in <u>Cisneros-Cabrera</u> held that the U.S.S.G. §2L1.2(b) enhancement was properly applied in a case when the conviction that triggered it had been vacated because of a constitutional infirmity. See 110 F.3d at 747-49. In the instant case, Earle had, and knew he had, a conviction for assault and battery, a crime of violence, when he unlawfully re-entered the United States. It does not appear to this court to have been fundamentally unfair to have applied the sentencing enhancement in Earle's case. As the First Circuit has not held, and this court does not find, that due process would be violated by applying the U.S.S.G. §2L1.2(b) enhancement in the circumstances of Earle's sentencing, he is not entitled to relief on this ground.

3. <u>Review of Deportation Proceedings</u>

Earle's second ground for relief involves 1990 deportation proceedings and asks the court for "judicial review of his Asylum, Amnesty and deportation Order." Petition at 7. As discussed

14

earlier, this ground is moot because Earle has already been deported as a result of the proceedings he complains of and, in any event, the court lacks jurisdiction to provide any relief. See 8 U.S.C. §1252; De Araujo, 457 F.3d at 151. Therefore, this ground is without merit.

### 4. Ineffective Assistance of Counsel

Earle's third ground for relief raises several claims of ineffective assistance of counsel. He argues that his trial counsel, Charles Rankin, failed to: 1) file a timely motion to suppress his statements and fingerprints before trial; 2) object during the voir dire to the seating of a juror whose English was inadequate; 3) make an opening statement; and 4) present evidence that would have proven him not guilty.

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonable effectiveness; and (2) that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial. See Strickland v. Washington, 466 U.S. 668, 689-699 (1984); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996).

"Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Moreover, the court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

The "prejudice" element of an ineffective assistance claim presents another high hurdle. To show prejudice, a claimant must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

    a) Failure to File a Timely Motion to Supress Earle's Statements and Fingerprints

Earle argues that he was denied effective assistance of counsel because his attorney failed to make a "timely motion to suppress the defendant's statement and fingerprints before trial." Petition at 8-9. With this claim, Earle presumably refers to the November 8, 2005 Motion to Suppress and Dismiss and For Leave to File ("Motion to Suppress"), filed by Rankin the day after the jury was impaneled.[2] The basis for this motion was the alleged failure of law enforcement officials to provide access to consular officials pursuant to Earle's rights under the Vienna Convention. At the time, First Circuit law did not provide a basis for

_____

[2] Rankin filed an August 3, 2005 Motion to Suppress that was allowed by the court in a November 2, 2005 Order.

suppression. See United States v. Li, 206 F.3d 56 (1st Cir. 2000). However, as the Motion to Suppress notes, the day before it was filed the Supreme Court granted certiorari in two cases raising the issue, which called the First Circuit decision into question.

Addressing the Motion to Suppress, the court specifically noted the timing, stating "[t]he motion wasn't made before trial, it was made after the jury was impaneled, and that wasn't an oversight on Mr. Rankin's part." Nov. 10, 2005 Transcript ("Tr.") at 75 (emphasis added). The court went on to note "[i]t happens to be that on the day that we impaneled, Monday, November 7, the Supreme Court granted cert essentially reopening this issue as to whether there's an individual right of action under the Vienna Convention." Id. Thus, the basis for the motion did not exist prior to trial. Therefore, Rankin's conduct did not fall below the objective standard of reasonable effectiveness imposed by Strickland. 466 U.S. at 687-88. In fact, Rankin's conduct in filing the Motion to Suppress so promptly after the basis for it was created is evidence of the effectiveness with which he represented Earle.

Earle provides no support for his assertion that Rankin should have filed a motion to suppress his fingerprints. The court is provided no reason as to why this should be deemed ineffective assistance of counsel. Therefore, this claim fails. See Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005)(stating

that the defendant bears the burden of proof in establishing an ineffective assistance of counsel claim).

b) <u>Failure to Strike Spanish Speaking Juror</u>

Earle also argues that his trial counsel was ineffective because he "fail[ed] to object to the Voir Dire of the jury panal [sic] and remove the Spanish speaking jury [sic] off the Panel." Petition at 12. He refers to juror Ramonita Pedraza.

During the voir dire the court asked potential jurors several questions, including "whether anyone has any difficulty understanding English, hearing, or any other problem that would make it difficult or impossible for him or her to serve?" Nov. 7, 2005 Tr. at 42. When the court posed this question to the potential jurors as a group, there was no response. <u>Id.</u> at 44. Subsequently, the court and counsel questioned each prospective juror individually. At this stage, Pedraza told the court that "a couple of answers, I didn't understand." <u>Id.</u> at 83. Upon further questioning, she stated that she had "a little bit" of trouble understanding the court's questions. <u>Id.</u> The court repeated the questions she indicated she had trouble understanding and during this colloquy Pedraza answered all of the court's questions appropriately. She further indicated that while she normally spoke Spanish at home, she was required to speak English at her job in the labeling department of a chemical factory. <u>Id.</u> at 83-84. Neither party objected to keeping Pedraza in the jury pool, and the

18

court informed her that if she was chosen, she should notify the courtroom clerk if she had any trouble following the proceedings. Id. at 85-86. She was ultimately chosen to serve on the jury and did so without incident.

There is no evidence that Rankin's failure to object to Pedraza "fell below an objective standard of reasonable effectiveness." Strickland, 466 U.S. at 687-88. Earle has failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. Given the colloquy previously described, Rankin had ample reason to believe that Pedraza's English proficiency was sufficient to allow her to serve on the jury, a conclusion also reached by both the court and the government.

Furthermore, even assuming that Earle had shown that Rankin's conduct was objectively unreasonable, he has not even attempted to show how he was prejudiced by it. In order to do so, he would have to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. His Petition simply states that Rankin's conduct was ineffective "and prejudice[d] him." Petition at 12. This is insufficient to meet his burden. Therefore, this claim is without merit.

c) <u>Failure to Make an Opening Statement</u>

Earle argues that Rankin provided ineffective assistance because he failed to make an opening statement. Motion For Leave to Amend Petition ("Motion to Amend") at 2. When offered the opportunity to do so, Rankin simply stated, "Your Honor, we will forego our right to make an opening statement at this time." Nov. 8, 2005 Tr. at 36. As instructed by <u>Strickland</u>, Earle must overcome the presumption that Rankin's decision was the result of sound trial strategy. 466 U.S. at 689. As Earle has provided no argument other than the simple fact that Rankin declined to make an opening statement, he has failed to overcome this presumption. Several Circuits have held that the decision not to make an opening statement does not in and of itself establish ineffective assistance. <u>See, e.g.</u>, <u>Moss v. Hofbauer</u>, 286 F.3d 851, 863 (6th Cir. 2002)("A trial counsel's failure to make an opening statement, however, does not automatically establish the ineffective assistance of counsel."); <u>United States v. Haddock</u>, 12 F.3d 950, 955 (10th Cir. 1993)("The failure to present an opening statement itself is not ineffective assistance."); <u>United States v. Mealy</u>, 851 F.2d 890, 909 (7th Cir. 1988)("[T]he mere fact that counsel did not make an opening statement is not sufficient for a defendant to prevail on a claim of ineffective assistance."). Indeed, foregoing an opening statement can be a wise tactical decision not to disclose the defendant's theory of the case until after hearing the

20

government's evidence.

Furthermore, Earle has again failed to show, or even to assert, that he was prejudiced by the failure to present an opening statement. Therefore, this claim is also without merit.

### d) Failure to Present Evidence

Finally, Earle also claims that Rankin was ineffective in that he failed to present evidence that would have proven Earle not guilty. Motion to Amend at 2. However, Earle does not explain what this evidence might have been. He has offered as exhibits tax returns, and transcripts of his 1990 deportation hearing and his 2005 criminal trial. See Exhibits G, H, and I to Motion to Amend. None of the attachments are evidence relevant to his criminal trial and none raise a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Again, Earle has failed to establish either deficient performance or prejudice as required by Strickland. Therefore, this claim too is without merit.

### 5. Right to English Speaking Jury

Earle argues that he had a Sixth Amendment right to an English speaking jury which was violated by the seating of Pedraza. Petition at 11. While the Sixth Amendment does not require English speaking juries, 28 U.S.C. §1865(b)(2) and (3) do require that jurors be able to speak English and read, write, and understand English "with a degree of proficiency sufficient to fill out

satisfactorily the juror qualification form." As discussed earlier, Pedraza demonstrated the requisite proficiency during the individual voir dire. <u>See</u> Nov. 7, 2005 Tr. at 83-86.   Neither party, nor the court, found Pedraza to be unqualified to serve on the basis of her English proficiency as demonstrated in both her voir dire and juror questionnaire. <u>Id.</u> Accordingly, this claim is also unmeritorious.

III. ORDER

For the foregoing reasons, it is hereby ORDERED that:

1.  Earle's Motion for Replacement of Counsel (Docket No. 149) is DENIED.

2.  Shea's Motion to Withdraw (Docket No. 152) is ALLOWED.

3.  Earle's Motion for Leave to Amend Petition (Docket No. 140) is ALLOWED.

4.  Earle's Motion for Writ of Mandamus and Declaratory Injunctive Relief (Docket No. 146) is DENIED.

5.  Earle's Motion for Writ of Mandamus Pursuant to 28 U.S.C. §1361 and for Declaratory Injunctive Relief (Docket No. 153) is DENIED.

6.  Earle's Motion for Restrain Pursuant to 28 CFR §543.11 (Docket No. 151) is DENIED.

7.  Earle's Motion for Leave to Proceed In Forma Pauperis (Docket No. 154) is DENIED.

8.  Earle's Motion to Vacate, Set Aside, or Correct Sentence

(Docket No. 136) is DENIED.

    9.  As the First Circuit has not yet decided whether there are "limited circumstances" in which application of the general rule of Luna-Diaz would violate the right to due process, and particularly has not decided whether a conviction valid at the time of deportation and re-entry but vacated before sentencing because of a constitutional infirmity may constitutionally provide a basis for a U.S.S.G. §2L1.2(b) sentencing enhancement, Luna-Diaz, 222 F.3d at 6 n.5, the issue of the constitutionality of the enhancement in Earle's case is CERTIFIED for appeal pursuant to 28 U.S.C. §2253(c).  See Miller-El v. Cockrell, 537 U.S. 332, 338 (2003)(holding that a petitioner is entitled to a certificate of appealability if able to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong").  None of the other issues raised by the Petition are "debatable."  Therefore, they are not certified for appeal

                                          /s/ Mark L. Wolf
                                  UNITED STATES DISTRICT JUDGE